J-S21044-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KESHON LAMAR CANYON :
:
Appellant : No. 10 MDA 2022

Appeal from the Judgment of Sentence Entered November 15, 2021
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0001291-2020

BEFORE: DUBOW, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED: JULY 19, 2022**

Keshon Lamar Canyon (Canyon) appeals from the judgment of sentence imposed by the Court of Common Pleas of Schuylkill County (trial court) after a jury found him guilty of two counts of possession with intent to deliver a controlled substance (PWID), three counts of possession of a controlled substance and one count of possession of drug paraphernalia.[1] On appeal, he challenges (1) the sufficiency of evidence for his PWID convictions, (2) the denial of his suppression motion, (3) the jury instructions about the Medical Marijuana Act (MMA),[2] (4) his expert being barred from testifying about

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30), (a)(16) and (a)(32), respectively.

[2] 35 P.S. §§ 10231.101-10231.2110.

certain matters, and (5) the trial court correcting defense counsel during cross-examination of a witness. We affirm.

**I.**

On May 3, 2020, Minersville Police applied for a warrant to search Canyon's home. According to the affidavit:

> During the month of February of 2020, [police] received multiple complaints of suspected drug activity from 214 Lewis Street, Minersville, Pa. Neighbors report seeing a large volume of stop and go traffic both in vehicle and on foot. Reports include vehicles parking outside and occupants exiting the vehicle, entering 214 Lewis Street and emerging a short later and leaving in vehicles. Neighbors also report a very strong odor of marijuana emitting from the home and it can be detected in the street and adjacent areas.

> On March 3, 2020, [police] conducted a trash pull from outside 214 Lewis Street, Minersville. During the operation, five (5) white trash bags and one (1) black trash bag were taken from curbside in front of 214 Lewis Street, Minersville and returned to the Minersville Police Headquarters. A search of the trash revealed medium and large glassine and vacuum style bags containing green leafy residue that field tested positive for marijuana, [and] mail addressed to Keshon Canyon and Samantha Lynn Ellex, 214 Lewis Street, Minersville.

> [Police] conducted a check on Canyon through the Pennsylvania State Police Central Repository. Result of this check indicated that Canyon had multiple arrests for trafficking of controlled substances and weapons violations, mainly originating from the Shenandoah Police Department.

> Upon reaching out to Shenandoah Police Chief George Carado concerning Canyon, Chief Carado advised that while living in Shenandoah, Canyon was involved in a shooting, was known to illegally possess firearms and was heavily involved in the trafficking of heroin. These investigations resulted in Canyon's arrest for the aforementioned violations.

After the warrant was issued, police executed it the same day. At the time of the search, Canyon was in the home with his father, his girlfriend and their two children. Inside the kitchen, police found 5.5 ounces of marijuana broken down into several smaller bags; a digital scale; a heat vacuum sealer; and a cell phone in a U.S. postage box. Inside a bedroom, police found a vacuumed sealed pouch containing 212 Tylenol with codeine pills; 29 hydrocodone pills; another digital scale; a safe; two more cell phones; silver aluminum packaging materials; a glass bong; a box of rolling materials; and $440 cash in Canyon's wallet. Inside the basement, police found 394 codeine pills hidden in the wall of the basement steps. Finally, the police found a medical marijuana card for Canyon but nothing else showing that the marijuana in the kitchen was prescribed by a doctor. Canyon repeatedly told the officers : "All the stuff in here is mine, nobody else's."

After being charged with the above offenses,[3] Canyon moved to suppress the items found in his home. When his motion was denied, he proceeded to an October 2021 jury trial. At trial, the Commonwealth presented Agent Leo Securda (Agent Securda) of the Pennsylvania Office of the Attorney General as an expert in "drug law investigation, identification, enforcement, packaging, and distribution." He concluded that Canyon

---

[3] Canyon was also charged with endangering the welfare of children, 18 Pa.C.S. § 4304, but the Commonwealth dropped the charge before trial.

intended to deliver the marijuana because of the way it was packaged. He stated the same about the codeine pills because of the large number (over 600) that were found. Canyon did not testify but presented David Leff (Leff), who testified as an expert on drug usage, packaging, methodology and drug trafficking, and opined that Canyon possessed the drugs for personal use. Aside from his medical marijuana card, however, Canyon presented no evidence that he was prescribed the marijuana.

The jury found Canyon guilty on all offenses, and the trial court sentenced him to an aggregate term of 2 to 8 years' imprisonment.[4] After the trial court denied his post-sentence motion, Canyon filed this appeal and raises eight issues for review, which we have reordered:

> 1. Did the evidence presented at trial establish beyond a reasonable doubt that Canyon was guilty of [PWID] marijuana and codeine in the form of Tylenol III.
>
> 2. Did the trial court err in failing to suppress the fruits of the search of [Canyon's] residence as the search warrant was not supported by probable cause.
>
> 3. Did the trial court err in failing to instruct the jury in accordance with Section 405 of the [MMA] that the Act limits the amount of marijuana that may be dispensed to a patient or caregiver to a thirty-day supply but does not limit the amount of marijuana that may be dispensed as a thirty-day supply, nor does it limit the amount that may be possessed by a patient or caregiver.

---

[4] The trial court sentenced Canyon to 1 to 4 years' imprisonment for each PWID count and merged their corresponding simple possession counts. The trial court imposed concurrent sentences on the remaining counts.

4. Did the trial court err in failing to instruct the jury that while Section 303(6) of the [MMA] provides that unused medical marijuana shall be kept in the original package in which it was dispensed, it does not limit the amount of medical marijuana that may be possessed by a patient or caregiver.

5. Did the trial court abuse its discretion in instructing the jury that defense counsel misstated the law in opening to the jury.

6. Did the trial court abuse its discretion in barring Canyon's expert from testifying regarding the existence of different strains of marijuana, thereby preventing defense counsel from arguing that the medical marijuana was in different packaging due to the different strains and not for purpose of distributing the same.

7. Did the trial court abuse its discretion in barring Canyon's witness from identifying documents which tended to show that Canyon was gainfully employed, thereby preventing defense counsel from arguing that the fact that Canyon was employed was evidence that he did not intend to distribute controlled substances.

8. Did the trial court abuse its discretion in criticizing defense counsel for not being accurate in describing the denominations of cash while cross-examining the Commonwealth's expert.

Canyon's Brief at 4-5.

## II. Sufficiency of Evidence

Canyon contends that the Commonwealth presented insufficient evidence for both of his PWID convictions. Like he did at trial, Canyon concedes possession but asserts there was not enough evidence that he intended to distribute any of the substances. Addressing the marijuana first, he emphasizes that the amount recovered (5.5 ounces) was not a large amount. He notes the same about the cash found in his wallet ($440), characterizing it as not an "excessive" amount of cash. Consistent with

personal use of marijuana, he observes that the police found a glass smoking device and a box of rolling papers.  As for the codeine, he emphasizes only that the pills were not packaged for resale.[5]

Section 780-113 of the Controlled Substance, Drug, Device and Cosmetic Act defines PWID as follows:  "Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance."  35 P.S. 780-113(a)(30).  To sustain a conviction for PWID, "the Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance."

_____

[5] Our standard of review of a sufficiency challenge is well-settled:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt.  The Commonwealth may sustain its burden by means of wholly circumstantial evidence.  Further, the trier of fact is free to believe all, part, or none of the evidence.

**Commonwealth v. Rayner**, 153 A.3d 1049, 1054 (Pa. Super. 2016) (citation omitted).

*Commonwealth v. Lee*, 956 A.2d 1024, 1028 (Pa. Super. 2008) (citations omitted).

"[T]he intent to deliver may be inferred from possession of a large quantity of controlled substances. It follows that possession of a small amount of a controlled substance supports the conclusion that there is an absence of intent to deliver." *Id*. If the quantity of the controlled substance is not dispositive as to the intent, the court may look to other factors. *Id*.

> Other factors to consider when determining whether a defendant intended to deliver a controlled substance include the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and ... [the] sums of cash found in possession of the defendant. The final factor to be considered is expert testimony. Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use.

*Commonwealth v. Ratsamy*, 934 A.2d 1233, 1237–38 (Pa. 2007) (quotation and internal quotation marks omitted).

We first address the PWID conviction for marijuana. At trial, Officer Jeffrey Bowers of the Minersville Police testified that the 5.5 ounces of marijuana in the kitchen was "prepackaged" and "broken down into smaller bags." N.T., 10/21/21, at 28. He also found a heat vacuum sealer, new vacuum seal bags and a digital scale near where he found the marijuana. *Id*. at 29. Based on these facts, Agent Securda concluded that the marijuana was packaged or for resale rather than for personal use. *Id*. at 147. He explained:

> So the factors that came into play were the glassine baggies
> that were found that were not used, did not have any residue in

them, are commonly used when a person obtains a larger amount or larger amounts of marijuana. It's broken up into gram, half gram, eighth ounce, however they want to break it up and sell it.

When it's broken up, it's weighed out on a scale, which there was a scale located in this case. The weight of the drug is how they set their pricing. It's different in marijuana than it is in tablets. Tablets are usually done by milligram, how many milligrams there are. There's a dollar amount set to it.

The marijuana or any other – cocaine, methamphetamine is all set by the weight of the substance. So the glassine baggies would have been used to repackage the substance, weighed out; and then pricing would be set for sale.

*Id*. at 148-49.

When asked about the weight of the marijuana, Agent Securda conceded it was not a large amount but iterated that did not preclude him from concluding the packaging showed an intent to distribute.

Q. In terms of the overall weight of the marijuana, did that play a role into the basis for your opinion?

A. It's not a large amount of marijuana. I have 145.93 grams. But the way it was packaged, it was packaged in smaller amounts that, like I had stated earlier, that usually when they repackage them, they set it for a sale amount.

*Id*. at 149.

As noted, how a controlled substance is packaged is a factor when determining whether a defendant intended to deliver a controlled substance. Here, the marijuana was broken down and packaged in smaller bags and found near a digital scale. The jury was presented with competing expert opinions about whether Canyon possessed the marijuana for personal use or distribution. After hearing both experts, the jury credited Agent Securda's

- 8 -

opinion over that of Canyon's expert and found that Canyon possessed the marijuana with an intent to distribute, a determination that they were free to make. Thus, viewing the evidence in the light most favorable to the Commonwealth, there was sufficient evidence to support PWID for marijuana.

We conclude the same about Canyon's PWID conviction for the codeine pills found in his bedroom and the basement. Unlike the small amount of marijuana, Agent Securda found the large number of codeine pills found dispositive in concluding that Canyon intended to distribute them. He explained:

> The Tylenol with codeine I believe was possessed with the intent to deliver because there was a bulk amount. 607 is a rather large amount to have. Typically, when you go to the doctor and they prescribe you such a pill, you only get maybe a 90-day supply, which if he was hoarding them, the doctor would have been – you only get a refill so many times.
>
> I'm sure everyone here has had a prescription. You don't get unlimited refills. And doctors are trained, oddly enough, by the Attorney General's Office to look for what they call drug-seeking culture or drug-seeking behavior. And they are told to not prescribe if they come across that. The amount of the pills, usually its set to $1 a milligram. These were, I believe, 30 milligram tablets, if I recall. So you're looking at a substantial gain of money that he could have incurred from this.
>
> The way that the officers found the drugs, that they were in a hidden compartment in the house or just behind the wall – I know I store my meds in a medicine cabinet. If he didn't have one, maybe that safe in his room would been a better spot for it.

*Id*. at 149-50.

The Commonwealth followed up about the street value. Since each tablet contained 30 milligrams, and with a street value of $1 per milligram,

that meant each tablet would be $30. *Id*. at 151. Because the police recovered over 600 tablets during the search, the total street value of the pills was over $18,000 according to Agent Securda. *Id*. at 154.

Viewing the evidence in the light most favorable to the Commonwealth, this was more than enough to support the PWID conviction for the codeine pills. While conceding possession and that he did not have a prescription for the pills, Canyon argues there was not enough evidence to establish that the pills were not for personal use. Through Agent Securda's expert testimony, however, the Commonwealth presented evidence that the sheer number of pills that Canyon possessed (over 600) expressed an intent to distribute, not to mention that nearly two thirds of the pills were hidden in the basement. Again, like its determination about the marijuana, the jury was free to credit Agent Securda's opinion over that of Canyon's expert that Canyon possessed the pills with an intent to distribute. We, thus, hold that his sufficiency challenge to his PWID conviction for the codeine pills fails as well.

### III. Suppression

Canyon also contends that the trial court erred in denying his motion to suppress. He emphasizes that the police never conducted surveillance of his home to verify the neighbors' complaints about the suspected drug activity. The same is true of the neighboring borough's police chief's claim that he was involved in trafficking heroin. Because neither was corroborated, Canyon asserts that they should have been disregarded by the magistrate. As for the

trash pull, he emphasizes that, after the passage of the MMA, the mere presence of marijuana residue in someone's trash should not provide enough probable cause for the issuance of a search warrant, citing our Supreme Court's decision in *Commonwealth v. Barr*, 266 A.3d 25, 44 (Pa. 2021) (holding that, following the enactment of the MMA, "the odor of marijuana alone does not amount to probable cause to conduct a warrantless search of a vehicle but, rather, may be considered as a factor in examining the totality of the circumstances.").[6]

In reviewing a challenge to a search warrant based on an affidavit of probable cause, our review is limited to "the information within the four corners of the affidavit." *Commonwealth v. Batista*, 219 A.3d 1199, 1202 (Pa. Super. 2019) (quoting *Commonwealth v. Rogers*, 615 A.2d 55, 62 (Pa.

---

[6] Our standard of review on suppression issues is well-settled:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Heidelberg*, 267 A.3d 492, 498-99 (Pa. Super. 2021) (*en banc*) (quoting *Commonwealth v. Bumbarger*, 231 A.3d 10 (Pa. Super. 2020)).

Super. 1992), and citing Pa.R.Crim.P. 203(D)). A reviewing court ensures that the issuing authority "had a substantial basis for concluding that probable cause existed" instead of reviewing de novo that determination. *Id*. (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983), and *Commonwealth v. Huntington*, 924 A.2d 1252, 1259 (Pa. Super. 2007)). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in and of themselves to warrant a [person] of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Jacoby*, 170 A.3d 1065, 1081–82 (Pa. 2017). A search should be conducted when "the police officers have a reasonable belief that the items to be seized are related to criminal conduct and that those items are presently located in the place to be searched." *Commonwealth v. Waltson*, 724 A.2d 289, 292 (Pa. 1998) (citing *Commonwealth v. Jackson*, 337 A.2d 582 (Pa. 1975)).

Moreover, unlike tips from confidential informants that require independent corroboration, Pennsylvania courts do not require an averment of facts to establish the credibility and reliability of an ordinary citizen. *See Commonwealth v. Lyons*, 79 A.3d 1053, 1064–65; *accord Commonwealth v. Brogdon*, 220 A.3d 592, 600 (Pa. Super. 2019) ("[A] citizen informer, identified eyewitness[,] or ordinary citizen reporting his or her observations of a crime stands on a different ground than a police informer."

Under the totality of the circumstances, we find that the issuing magistrate had a substantial basis for determining that probable cause existed for the search warrant for Canyon's home. First, rather that receiving a single report from one neighbor, the affidavit relates that the police received multiple reports about Canyon's home. Whereas a single report would tend to be less reliable, multiple reports of the same complaint inherently tend to bolster each other, making it less likely that the complaints are not accurate, not to mention that the reports are received from ordinary citizens as opposed to confidential informants.

Second, contrary to Canyon's assertions, the police corroborated the neighbors' complaints by conducting a trash pull of Canyon's trash. As noted, the police found Canyon's mail in the trash, confirming that it was, in fact, his trash. Moreover, the police discovered "medium and large glassine and vacuum style bags containing green leafy residue that field tested positive for marijuana." Thus, police substantiated the neighbors' complaints about not only the smell of marijuana coming from the home but also that Canyon was possibly distributing, at the very least, marijuana out of the home. On top of that, the police conducted the trash pull on the same day that they applied for the search warrant, thus avoiding any complaints the information was stale.

Third, the police went on to independently check the Pennsylvania State Police Central Repository and confirm that Canyon had multiple arrests for trafficking of controlled substances and weapons violations, which they

confirmed with a neighboring police chief. Whatever weight the magistrate afforded to this information in no way diminished the fact that police had corroborated the neighbors' complaints through the trash pull. Thus, under the totality of the circumstances, based on the facts within the four corners of the affidavit, the magistrate had a substantial basis for finding that probable cause existed that Canyon was distributing, at the very least, marijuana from his home.

Finally, our Supreme Court's decision in **Barr** does not compel a different result. This Court has previously summarized the facts of that case:

> In [**Barr**], Pennsylvania State Police troopers pulled over a vehicle driven by the defendant's wife for a Vehicle Code violation and they detected the smell of burnt marijuana as they approached the vehicle. The troopers stated their intention to search the vehicle based upon probable cause from the odor of marijuana, whereupon the defendant, who was in the passenger seat of the vehicle, presented a medical marijuana identification card. After the troopers recovered a firearm and marijuana from the vehicle, the defendant was charged with person not to possess a firearm and possession of a small amount of marijuana.

> In analyzing the impact of the MMA on probable cause assessments, the Court found "that the MMA makes abundantly clear that marijuana no longer is *per se* illegal in this Commonwealth. Accordingly, the enactment of the MMA eliminated this main pillar supporting the 'plain smell' doctrine as applied to the possession or use of marijuana." [**Barr**, 266 A.3d] at 41. However,

>> the [Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§ 780-101—144] still renders possession of marijuana illegal for those not qualified under the MMA. Thus, the smell of marijuana indisputably can still signal the possibility of criminal activity. Given this dichotomy, we conclude that the odor of marijuana may be a factor, but not a stand-alone one, in evaluating the totality of the

- 14 -

circumstances for purposes of determining whether police had probable cause to conduct a warrantless search.

In so doing, we emphasize that the realization that a particular factor contributing to probable cause may involve legal conduct does not render consideration of the factor *per se* impermissible, so long as the factor is considered along with other factors that, in combination, suggest that criminal activity is afoot. As recognized by the Commonwealth, the totality-of-the-circumstances analysis encompasses the consideration of factors that may arguably be innocent in nature.

*Id*. at 42 (case citation omitted).

*Commonwealth v. Lutz*, 270 A.3d 571, 578-79 (Pa. Super. February 14, 2022).

Thus, that the marijuana residue found in the trash pull from Canyon's home may have been legally obtained does not mean that it could not still be considered. More importantly, that the marijuana may have been legally obtained does not explain the neighbors' complaints of suspected drug activity at Canyon's home, which was the impetus for the trash pull in the first place. Accordingly, having found that *Barr* does not compel a different result, we conclude the trial court properly denied Canyon' motion to suppress.

## IV. Jury Instructions

Canyon next raises three issues with the trial court's jury instructions concerning the MMA. First, he claims that the trial court instructed the jury that medical marijuana users are limited to a 30-day supply but did not explain that the MMA does not quantify how much that would be. Second, he faults the trial court's instruction that medical marijuana must be maintained in its

original packaging or it was otherwise possessed illegally. Third, he criticizes the trial court for pointing out that defense counsel misstated the law in his opening that the Commonwealth must show that it chemically tested the marijuana for different strains. None of these issues, however, were preserved for appeal.

To preserve a challenge to the adequacy or omission of a particular jury instruction, the defendant must make a specific and timely objection to the instruction at trial before the jury deliberates. *See Commonwealth v. Smith*, 206 A.3d 551, 564 (Pa. Super. 2019); *see also* Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of."); Pa.R.Crim.P. 647(C) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate."). A specific and timely objection must be made to preserve a challenge to a particular jury instruction; failure to do so results in waiver. *See Commonwealth v. Forbes*, 867 A.2d 1268, 1274 (Pa. Super. 2005).

After the trial court gave its jury charge, Canyon did not raise a specific and timely objection to the instructions about the MMA, even when the trial

court asked him if he wished to raise anything before the jury deliberated. *See* N.T., 10/22/21, at 373-374. As a result, his challenges are waived.[7]

Even if properly preserved, we would find his challenges meritless. The trial court's instructions about the MMA were limited to this:

> And before I go on to talk about the possession with intent to deliver, I think I should talk to you about the Medical Marijuana Act since that was brought up in this case and it's not something that a layperson would be aware of if it's a law of Pennsylvania. The possession of marijuana is against the law in Pennsylvania, unless it's possessed in accordance with the Medical Marijuana Act, which would require that a person have a medical marijuana card and that the marijuana be prescribed by a doctor and dispensed by an authorized dispensary.

> But it also requires that the marijuana has to be stored – whatever is not immediately used has to be stored in the same packaging as it was dispensed, the same package that it came from the dispensary. It can't be stored otherwise. If it's stored otherwise, it becomes an illegally possession of marijuana. And it cannot – also, if it's dispensed in the leaf form, it cannot be burned.

> So you should consider that in terms of the charge of possession of marijuana, whether or not you believe the Defendant possessed the marijuana, whether he possessed it lawfully. That's how the medical marijuana card comes into play in this act. It's not a lawful possession if you change the packaging, even if you obtain it originally lawfully from an authorized dispensary.

*Id*. at 371-72.

---

[7] Canyon also waived his second challenge about the packaging by failing to include it in his Pa.R.A.P. 1925(b) statement. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

First, contrary to Canyon's claims, the trial court never instructed the jury that medical marijuana users are limited to a 30-day supply, nor does he point us to where he believes the trial court made the alleged misstatement. Second, the trial court correctly instructed the jury about the packaging of marijuana:  a condition for the "lawful use of medical marijuana" is that it "shall be kept in the original package in which it was dispensed."  35 P.S. § 10231.303(b)(6).  Third, we find no abuse of discretion in the trial court clarifying that the Commonwealth had no burden of showing that the marijuana was chemically tested for different strains; we are unaware of any case law for such a proposition, nor does Canyon point us to any.  Thus, all three of his jury instruction challenges fail.

## V. Defense Expert

Canyon raises two issues with the trial court precluding Leff from testifying about certain matters concerning his expert opinion.  First, Canyon asserts that the trial court erred in barring Leff from testifying that there are different strains of marijuana which can be prescribed for different medical conditions, which would explain why Canyon had the marijuana broken down into different bags.  Second, Canyon argues that Leff should have been allowed to testify about reviewing Canyon's federal tax returns as part of his

review of the case, the purpose being to show that Canyon was employed and less likely to distribute controlled substances.[8]

First, the trial court explained its reasoning for barring Canyon's expert from testifying about different strands of marijuana:

> …Defense counsel sought to have Mr. Leff testify that the individual bags of marijuana contained different strains and were separated by Canyon much the same way one might place different medications in different containers. To bolster the proposed testimony, counsel proposed allowing Leff to inform the jury that Canyon had a "DSM-5 diagnosis." There are several reasons Mr. Leff was not permitted to do so.
>
> Canyon chose not to testify. No medical testimony was proposed by Canyon to establish a diagnosis. Whatever documents there may been to support such a diagnosis would have been hearsay, and Mr. Leff was not qualified to render medical opinions. Furthermore, defense counsel acknowledged he had no evidence regarding the strain or strains of marijuana in the bags found in Canyon's house. Mr. Leff would have testified that the marijuana in the bags did not appear to be the same strain, but there was no evidence as to what strain or strains may have been prescribed for Canyon. In fact, there was no evidence that Canyon had obtained any marijuana from a dispensary. Testimony about what strains of marijuana are generally prescribed to treat specific ailments would require medical expertise, which Canyon's expert did not possess. It would also have been irrelevant without evidence of the strain or strains

---

[8] As this Court has explained concerning expert testimony:

> Our standard of review in cases involving the admission of expert testimony is broad: Generally speaking, the admission of expert testimony is a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion. An expert's testimony is admissible when it is based on facts of record and will not cause confusion or prejudice.

***Commonwealth v. Watson***, 945 A.2d 174, 176 (Pa. Super. 2008) (internal citations omitted).

present in the marijuana found in Canyon's residence and without competent evidence that Canyon suffered from a particular ailment. If counsel wanted to pursue this line of defense, he could have had the recovered marijuana independently tested and presented testimony from Canyon's treating physician.

Trial Court Opinion (TCO), 11/30/21, at 5-6.

We agree with this analysis. Under Pennsylvania Rule of Evidence 702, an expert witness can testify when "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Pa.R.E. 702(b). There was no evidence that the marijuana found was prescribed, let alone that Canyon was prescribed different strains of marijuana for different medical diagnosis. Instead, Canyon was hoping to have the expert testify about how sometimes different strains of medical marijuana are prescribed for different reasons, and that this was the reason the marijuana found was packaged in different bags, even though there was no record evidence of that being the case. As a result, we find no abuse of discretion in the trial court precluding Canyon's expert from testifying about something for which there was no evidence.

We next address the trial court precluding Leff from testifying about Canyon's tax returns, which Canyon did not otherwise admit into evidence. As our Supreme Court has explained:

> An expert opinion may be based on inadmissible facts or facts not in evidence, including other expert opinions and hearsay statements, as long as such facts are of a type reasonably relied on by experts in that profession. ***See*** Pa.R.E. 703; ***see also Commonwealth v. Chambers***, 528 Pa. 558, 599 A.2d 630, 639 (1991) (citations omitted). Implicit in Rule 703 is the trial court's

sound discretion under Pa.R.E. 104(a) to make a preliminary determination as to whether the particular underlying facts are of a kind reasonably relied upon by experts in the particular field. *See id*., 703 cmt. Rule 705 of Pennsylvania's Rules of Evidence mandates, "If an expert states an opinion[,] the expert must state the facts or data on which the opinion is based." *Id*., 705. However, an expert may not act as a mere conduit of hearsay or transmitter of extrajudicial information. *See id*., 703 cmt. ("An expert witness cannot be a mere conduit for the opinion of another … [and] may not relate the opinion of a non-testifying expert[.]").

*Commonwealth v. Towles*, 106 A.3d 591, 605-06 (Pa. 2014).

In this case, Leff was going to state that the tax returns had been filed, without any detail as to who or how much Canyon made, to opine that Canyon was gainfully employed and less likely to be a street drug dealer.

We find that the trial court did not abuse its discretion in precluding Canyon from having Leff testify that he had filed tax returns that Canyon made no effort to admit at trial or, for that matter, offer any evidence that he was gainfully employed. While expert opinion may be based on inadmissible facts or facts not in evidence, the expert may not be a conduit of direct evidence to avoid having to prove essential facts particular to the case at issue necessary to render the opinion. As the trial court determined, Canyon was merely trying to use his expert as a means of admitting non-record facts that he was otherwise unwilling to independently admit. As a result, we will not disturb the trial court's discretion in precluding Canyon from introducing inadmissible hearsay through his expert.

## VI. Admonishment of Defense Counsel

In his final issue, Canyon faults the trial court for correcting defense counsel during his cross-examination of a witness about the denominations of the bills found in Canyon's wallet. *See* N.T., 10/21/21, at 172-73. He does not dispute that his counsel inadvertently misstated the bills but nonetheless argues that the trial court should have allowed the witness to correct him rather than single him out in front of the jury.

Canyon waived this issue by not including it in his Pa.R.A.P. 1925(b) statement. *See* Pa.R.A.P. 1925(b)(4)(vii). Regardless, as the trial court stated:

> The testimony regarding the denominations of the currency found in Canyon's wallet came during Officer Bowers' testimony. In that cross-examination counsel was making the point that the police did not find small bills consistent with street sales and specifically referred to the absence of any five-dollar bills and the presence of only one ten-dollar bill. In the above quoted cross-examination, defense counsel was stating his questions in a manner suggesting he was not at that time sure of his recollection about the number of tens and fives found. The Court was merely helping him to recall the denominations which were not in dispute by reminding him that he had previously made the point that there were no fives found. In no way was he reprimanded.

TCO at 9. We have little to add to this other than Canyon cites no case law for the proposition that a trial court can commit reversible abuse of discretion by correcting a misstatement of fact made by counsel. After reviewing the relevant exchange, we find no error in the trial court correcting counsel's misstatement of fact.

Judgment of sentence affirmed.

- 22 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 07/19/2022