J-S06006-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT NICHOLAS KULL | : | |
| | : | |
| Appellant | : | No. 1057 MDA 2022 |

Appeal from the Judgment of Sentence Entered July 14, 2022
In the Court of Common Pleas of Schuylkill County
Criminal Division at No.:  CP-54-CR-0000357-2021

BEFORE:   STABILE, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                    **FILED:  June 16, 2023**

Appellant Robert Nicholas Kull appeals from the July 14, 2022 judgment of sentence entered in the Court of Common Pleas of Schuylkill County ("trial court"), following his bench conviction for possession of a controlled substance, possession of drug paraphernalia, and driving on a suspended license.[1]  Upon review, we affirm.

The facts and procedural history of this case are undisputed.  Briefly, following a traffic stop on December 12, 2020, Appellant was arrested and charged with, *inter alia*, the foregoing crimes.  On July 23, 2021, Appellant filed a pretrial suppression motion, which sought to exclude all contraband confiscated from his vehicle during the stop.  On August 18, 2021, the trial

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(16), (32) and 75 Pa.C.S.A. § 1543(b)(1)(i), respectively.

court held a hearing on the motion at which only the Commonwealth presented witness testimony. The Commonwealth called to the stand Officer Isaac Souchak, Minersville Police Department, whose testimony the trial court summarized as follows:

> Officer Souchak testified that he has been a police officer for approximately 10 years in Minersville Borough, St. Clair Borough, and previously New York City. He was also a federal law enforcement officer with the Unites States Coast Guard. He testified that he has received narcotics and addiction training through the Department of Homeland Security as well as the Coast Guard. He also received specialized training with the New York City Police Department in street narcotics enforcement and worked in street narcotics enforcement for two years. As part of his training, he learned to identify controlled substances and drug paraphernalia. Officer Souchak conducted approximately 200 plus narcotics investigations in New York City and approximately 75 to 100 narcotics investigations in the St. Clair and Minersville police departments. He currently is part of the Drug Investigation Unit for the City of Pottsville police department.

> During the hearing, Officer Souchak testified that he remembered the traffic stop. He testified that he pulled [Appellant] over because [Appellant] failed to signal while merging into a traffic lane from a parked position. [Appellant] pulled into a parking lot with artificial lighting. Officer Souchak observed [Appellant] reach down toward the passenger side, lean forward, and then immediately exit the vehicle with U.S. currency in one of his hands. Officer Souchak discovered that [Appellant] had an active arrest warrant as well as a suspended license. With [Appellant] still outside of the vehicle, Officer Souchak placed him into custody due to the active arrest warrant.

> Officer Souchak testified: "Well, we had to remove his dog that was in the vehicle. He did have a dog that was in there jumping around. And once that was secure, we were going to tow it because it was in a private lot." Later he testified: ". . . there was a pretty angry dog inside. So I was walking around the outside of the vehicle while determining how we were safely going to remove the dog." He testified the dog was barking and growling.

- 2 -

During the course of Officer Souchak's interaction with the vehicle itself, he observed a "folded dollar bill, containing a substance which later testified positive for methamphetamine in plain view in the center console. And then also on the rear passenger side window, I was able to observe a glass pipe used in smoking illicit narcotics." Officer Souchak indicated he was able to observe through the passenger window approximately two inches of the section of the glass pipe, that one would apply their mouth, protruding from underneath the passenger seat. He added that there was residue on the portion of the pipe he observed. He testified it was readily apparent to him that the glass pipe was used for narcotics. Officer Souchak agreed that the dollar bill was folded lengthwise from the bottom to the top. He recalled the dollar bill contained a white substance that he believed to be methamphetamine. He stated the incriminating nature was readily apparent when he "saw" it. However, in accordance with Minersville Police Department policy he conducted a presumptive field NIK test, which ultimately confirmed the substance was methamphetamine. Officer Souchak further testified that he noticed the glass pipe while he was using the flashlight. He indicated that he always uses a flashlight even during the daytime. He stated that during his recovery of the glass pipe, he recovered a Ziploc bag containing what was later identified as methamphetamine. When questioned by counsel, Officer Souchak consistently agreed the pipe and Ziploc bag were visible through the passenger window. He stated that the Ziploc bag was right next to the pipe, slightly behind it. He affirmed he was able to view the Ziploc bag when he was in a position to recover the pipe.

Based on his experience and training, Officer Souchak felt that the dollar bill on the console was being utilized for drug activity due to it being an "open-ended, folded dollar bill." He also felt it was utilized for drug activity due to the dollar bill containing the white crystal-like substance, a substance Officer Souchak had numerous times previously identified, seized, and confirmed to be methamphetamine. Officer Souchak testified that there was enough white powdery substance on the dollar bill for him to be able to view the substance and recognize that it was an illicit narcotic. In terms of the location of the bags of methamphetamine, Officer Souchak testified that they were right next to the pipe which was in plain view. He testified that he was able to view the bags of methamphetamine when he was in the position to recover the glass pipe. Officer Souchak conceded that

the syringes found in the bags of methamphetamine were not in plain view.[2]

Officer Souchak testified that [Appellant]'s car was towed by Hammers Garage to a private car lot due to it obstructing ingress and egress from the parking lot. He also testified that he had [Appellant] remove the dog because the dog was acting "in a vicious manner," and it would be better for [Appellant], as the owner, to remove his dog. During the dog's removal, Officer Souchak remained directly next to [Appellant] to prevent any type of prisoner escape since he took [Appellant] from being rear-handcuffed to being front-handcuffed to effectuate the dog's removal from the car. Officer Souchak believes [Appellant] removed the dog from the passenger side door. Upon the door opening, the interior lights of the vehicle illuminated. Officer Souchak testified that if he had not previously observed the dollar bill and pipe in plain view when [Appellant] opened the car door to remove the dog those items still would have been where he found them.

Trial Court Opinion, 10/13/21, at 3-6 (record citations omitted; emphasis in original). On October 13, 2021, the trial court denied Appellant's suppression motion. On May 23, 2022, Appellant proceeded to a stipulated non-jury trial, following which the trial court found him guilty of possession of a controlled substance, possession of drug paraphernalia, and driving on a suspended license.[3] On July 14, 2022, the trial court sentenced Appellant to an aggregate of 6 to 23 months' imprisonment, among other things. Although he did not file any post-sentence motion, Appellant timely appealed. The trial court

_____

[2] The Commonwealth conceded that the syringes found in the black bag were not in plain view and advised the court that it was not pursuing paraphernalia charges relative to the syringes. N.T., Suppression, 8/18/21, at 3. Thus, the possession of drug paraphernalia charge was premised on the discovery of the glass pipe. **Id.**

[3] The trial court found Appellant not guilty of possession with intent to deliver a controlled substance (methamphetamine). N.T., Trial, 5/23/22, at 2.

directed Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant complied, challenging only the denial of his suppression motion. In response, the trial court issued a statement in lieu of a Pa.R.A.P. 1925(a) opinion, adopting its October 13, 2021 order and opinion denying Appellant's suppression motion.

On appeal, Appellant argues that the trial court "abused its discretion and/or committed an error of law by denying [his suppression motion] and finding that the Minersville Police Department had probable cause and/or exigent circumstances to conduct a warrantless search of [his] motor vehicle on December 12, 2020." Appellant's Brief at 4. In essence, Appellant claims that under *Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020),[4] the Minersville Police Department needed probable cause and exigent circumstances to conduct a warrantless search of his vehicle, even if the police relied upon the plain view doctrine. Appellant's Brief at 15. We disagree.

We repeatedly have determined that *Alexander* "does not address the plain view exception or any alterations to its requirements." *Commonwealth v. Smith*, 285 A.3d 328, 332 (Pa. Super. 2022); *see also Commonwealth v. McMahon*, 280 A.3d 1069, 1073 (Pa. Super. 2022) (noting that *Alexander* pertains only to the automobile exception to the warrant requirement);

_____

[4] In *Alexander*, the Court concluded that Article I, Section 8 of the Pennsylvania Constitution "affords greater protection to our citizens than the Fourth Amendment," reaffirming pre-*Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014) (plurality) decisions that required police to have **both** probable cause and exigent circumstances before conducting a warrantless search of an automobile. *Alexander*, 243 A.3d at 181.

*accord Commonwealth v. Lutz*, 270 A.3d 571, 576 (Pa. Super. 2022).

Thus, consistent with the foregoing cases, where the circumstances permit an application of the plain view doctrine, we need not apply *Alexander*.

Having determined that *Alexander* is inapplicable *sub* judice, we now turn to Appellant's claim, raised particularly in the argument section of his brief, that the incriminating nature of the items seized from his vehicle was not readily apparent to Officer Souchak. *See* Appellant's Brief at 18. In other words, he suggests that the trial court erred in denying his suppression motion under the plain view doctrine. As we have explained:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Mbewe*, 203 A.3d 983, 986 (Pa. Super. 2019) (quotations and citations omitted). Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial. *In the Interest of L.J.*, 79 A.3d 1073, 1085 (Pa. 2013).

Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures by police in areas where individuals have a reasonable expectation of privacy. An expectation of privacy exists if a person has a subjective expectation of privacy that society is willing to recognize as legitimate and reasonable. Where there exists a reasonable expectation of privacy, Article I, Section 8 and the Fourth Amendment generally require police to obtain a warrant, issued by a neutral and detached magistrate and founded upon probable cause, prior to conducting a search or seizure of a person and/or a person's property, unless one of the few well delineated exceptions apply.

*Commonwealth v. Loughnane*, 173 A.3d 733, 741 (Pa. 2017) (citations omitted). One such exception is the plain view doctrine first recognized by the United States Supreme Court in *Coolidge v. New Hampshire*, 403 U.S. 443, 464-69 (1971). Subsequently, in *Horton v. California*, 496 U.S. 128 (1990), the United States Supreme Court adopted a three-pronged test for the application of the plain view doctrine: (1) the police must observe the object from a lawful vantage-point; (2) the incriminating character of the object must be immediately apparent; and (3) the police must have a lawful right of access to the object. *Id.* at 136-37; *accord Commonwealth v. Collins*, 950 A.2d 1041, 1045 (Pa. Super 2008) (*en banc*).

Moreover, we recently explained in *Smith*:

There can be no reasonable expectation of privacy in an object that is in plain view. The question of whether property in plain view of the police may be seized must turn on the legality of the intrusion that enables them to perceive and physically seize the property in question. As we have long observed, there is no legitimate expectation of privacy shielding the portion of the interior of an automobile that may be viewed from outside the vehicle by either an inquisitive passerby or diligent police officers. Furthermore, we are mindful that the Motor Vehicle Code provides

the statutory authorization for a police officer to stop a motor vehicle whenever a police officer has reasonable suspicion that a violation of this title is occurring or has occurred so that he may secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

In determining whether the incriminating nature of an object is immediately apparent to the police officer, we look to the totality of the circumstances. An officer can never be one hundred percent certain that a substance in plain view is incriminating, but his belief must be supported by probable cause. When reviewing whether an object's criminal nature is immediately apparent, we note that probable cause merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief, that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A practical, non-technical probability that incriminating evidence is involved is all that is required. Where police officers observe incriminating-looking contraband in plain view in a vehicle from a lawful vantage-point, the lack of advance notice and opportunity to obtain a warrant provides the officers with a lawful right of access to seize the object in question.

*Smith*, 285 A.3d at 332-33 (quotation marks, brackets, ellipses, and citations omitted).

Here, as noted earlier, Appellant assails only the second prong of the plain view doctrine—*i.e.*, the incriminating character of the object must be immediately apparent. Based upon our review of the record, as detailed above, and given the totality of the circumstances, we discern no basis upon which to overrule the trial court's application of the plain view doctrine. The court aptly reasoned:

Officer Souchak credibly and specifically testified that the dollar bill was in plain view, folded in such a way that he could see the white crystal-like, controlled substance contained within the folded portion. Likewise, he testified that approximately two

- 8 -

inches of the white-residue coated, mouth portion of the pipe was in plain view, and the bags of methamphetamine came into plain view when lie was in a position to remove the pipe. . . .

[T]he facts available to Officer Souchak as well as his extensive experience in narcotics investigations enable[ed] him to identify the immediately apparent incriminating nature of the items. He testified that he had previously seized white crystal-like substances, during narcotics investigations on multiple occasions, resulting in the confirmation of the presence of methamphetamine. This experience rendered the items' incriminating nature readily apparent to Officer Souchak providing the requisite probable cause to believe the items were incriminating. He did not need to conduct any additional inspection to recognize their incriminating nature. Pursuant to the credible testimony, the methamphetamine and paraphernalia itself was visible in plain view.

Trial Court Opinion, 10/13/21, at 7-8 (record citations omitted). We agree with the trial court's analysis. Accordingly, under the totality of the circumstances, Officer Souchak plainly viewed the methamphetamine-coated dollar bill, glass pipe and methamphetamine-filled Ziploc bag in Appellant's vehicle when the officer explored humane ways to remove Appellant's dog from the vehicle during the traffic stop. Accordingly, the trial court did not err in denying Appellant's suppression motion.

To the extent Appellant invites us to accept his proffered version of the events, claiming that Officer Souchak's testimony, contrary to the trial court's determination, was patently incredible and inconsistent, we decline the invitation. It is settled that we may not substitute our judgment for that of the factfinder—whether a jury or the trial court—because it is the province of the factfinder to assess the credibility of the witnesses and evidence. *See* ***Commonwealth v. Luczki***, 212 A.3d 530, 542 (Pa. Super. 2019) (citation

omitted) ("[I]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony."); ***Commonwealth v. Johnson***, 668 A.2d 97, 101 (Pa. 1995) ("an appellate court is barred from substituting its judgment for that of the finder of fact."); ***Commonwealth v. Forbes***, 867 A.2d 1268, 1273 (Pa. Super. 2005) (stating that "[t]he weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, part, or none of the evidence and to determine the credibility of witnesses. An appellate court cannot substitute its judgment for that for the finder of fact.").

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/16/2023