J-S31045-21

2022 PA Super 24

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                            :       PENNSYLVANIA
                                                            :
                    v.                                       :
                                                            :
                                                            :
ANN LUTZ                                             : 
                                                            :
                  Appellant            :    No. 1047 EDA 2021

Appeal from the Judgment of Sentence Entered May 18, 2021
In the Court of Common Pleas of Carbon County Criminal Division at
No(s):  CP-13-CR-0001094-217

BEFORE:  STABILE, J., KING, J., and PELLEGRINI, J.[*]

OPINION BY PELLEGRINI, J.:               **FILED FEBRUARY 14, 2022**

      Ann Lutz (Lutz) appeals from the judgment of sentence imposed in the Court of Common Pleas of Carbon County (trial court) following her conviction for possession of drug paraphernalia and possession of a small amount of marijuana.  Lutz challenges the trial court's denial of her motion to suppress the evidence recovered from her vehicle and the court's application of the plain view and search incident to arrest exceptions to the warrant requirement.  We vacate the judgment of sentence, affirm and reverse the suppression order in part and remand for further proceedings.

---

[*] Retired Senior Judge assigned to the Superior Court.

**I.**

**A.**

This case arises from Lutz's arrest in May 2017 on charges of two counts of driving under the influence of a controlled substance (DUI) and one count each of possession of a controlled substance, possession of a small amount of marijuana and possession of drug paraphernalia.[1] Prior to her jury trial, Lutz filed a motion to suppress evidence challenging the legality of the search of her vehicle.

Sergeant Shawn Nunemacher of the Lansford Police Department was the only witness at the December 10, 2019 suppression hearing. His testimony reflected that on May 5, 2017, at 8:30 a.m., he responded to a report of a suspicious vehicle parked at the foot of a private community on a water authority road. Police regularly patrolled this location because it is known for its drug activity and as an area where people dump garbage.

Sergeant Nunemacher approached Lutz's vehicle, which was parked in a rocky area, and he heard loud music coming from her car. Upon noticing the police vehicle, Lutz exited her car, approached Sergeant Nunemacher and walked toward him with a slow, staggered gait to identify herself. Sergeant Nunemacher repeatedly asked Lutz for her driver's license and "had to redirect

---

[1] 75 Pa.C.S. §§ 3802(d)(1),(d)(2) (DUI charges relating to controlled substance/drug impairment); 35 P.S. §§ 780-113(a)(16), (a)(31), (a)(32).

her several times" before she retrieved it from her vehicle because she "continued to talk and wander off other ways." (N.T. Suppression, 12/10/19, at 5). As they spoke, Sergeant Nunemacher detected the odor of alcohol on Lutz's breath and observed that she used slow, slurred speech. He asked Lutz to perform three basic coordination tests and she exhibited a lack of balance and signs of impairment during each test.

Sergeant Nunemacher called for backup and two police officers arrived at the scene to administer a preliminary breath test (PBT) to Lutz. Sergeant Nunemacher testified that the officers were unable to obtain an accurate reading because Lutz did not follow the instructions to provide an adequate sample. Lutz "wouldn't consistently blow or she would give short pulsing breaths so the PBT couldn't get a reading" and he "explained to her that due to her showing signs of impairment if she couldn't give me something on the PBT to show she wasn't impaired, that I would be placing her under arrest for DUI." (*Id.* at 7).

Sergeant Nunemacher then left Lutz in the custody of the two other police officers to continue PBT testing and he checked on her vehicle which was still running. Lutz had left her keys inside the car and the driver's side door open with the window down. Sergeant Nunemacher looked inside the open door and immediately observed a metal pipe sitting on the driver's seat. He picked up the pipe and it "smelled very strongly of burnt marijuana" and contained "remnants . . . and pieces in there." (*Id.* at 24; *see id.* at 7-8).

He described the pipe as "cylinder . . . [with] a cone on the end of it [] with another end that is commonly used for smoking."  (*Id.* at 17).  He acknowledged that the pipe could be used to smoke tobacco, but explained that "objects like this in my training and experience are commonly makeshift pipes used for drug use."  (*Id.*).

There were no occupants in Lutz's vehicle and her personal belongings and garbage filled the passenger seat and entire backseat of the car.  Sergeant Nunemacher took possession of the pipe and returned to where Lutz was in the custody of the other officers.  They advised that the PBT reading showed a breath alcohol content (BrAC) of 0.06% but they were unable to confirm its accuracy because of Lutz's lack of cooperation in taking the test.[2]  Sergeant Nunemacher informed Lutz that she was under arrest for suspicion of DUI, placed her in handcuffs and gave her *Miranda*[3] warnings.  He asked Lutz if she had anything illegal in the car and she admitted that she "might have some marijuana."  (*Id.* at 9).

Sergeant Nunemacher returned to Lutz's vehicle and observed an open beer can sitting in the center console.  He testified that he was able to see both the beer can and the metal pipe he had already confiscated "from the

_____

[2] The threshold BrAC for DUI—general impairment is 0.08%.  *See* 75 Pa.C.S. § 3802(a)(2).

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

open door . . . without even going in the vehicle." (*Id.* at 9-10; *see id.* at 24).

Sergeant Nunemacher then searched the car and recovered an eyeglass case containing suspected marijuana from underneath the driver's seat. He also found a bag containing a blue pill and a cut straw from the area where the driver's seat meets the center console.[4] Testing on the substance found in the eyeglass case confirmed it was marijuana. Sergeant Nunemacher testified that he did not ask Lutz for permission to search her vehicle because "she was in custody for DUI" and he conducted the search "incident to arrest." (*Id.* at 10).

## B.

The trial court denied Lutz's suppression motion. Lutz filed a motion to reconsider the ruling in light of our Supreme Court's decision in *Commonwealth v. Alexander*, 243 A.3d 177, 181 (Pa. 2020), which addressed the requirements under the Pennsylvania Constitution of the automobile exception to the warrant requirement. In *Alexander*, two Philadelphia police officers stopped a vehicle driven by Alexander at 2:30 a.m. The officers smelled marijuana and Alexander stated that he and his female passenger, who owned the vehicle, had just smoked a blunt. Officer Godfrey

---

[4] The specific formulation of the pill was never identified and does not form the basis of any charges in this case.

arrested Alexander and placed him in the patrol vehicle, while the passenger was removed from the car. The officers searched the interior for more marijuana but only found a metal box behind the driver's seat. The box opened with a key Alexander had on his keychain and contained bundles of heroin. Alexander was charged with, *inter alia*, possession with intent to deliver and filed a suppression motion challenging the search, which was denied. At a bench trial, he was convicted of possession with intent to deliver. *See id*. at 181.

Our Supreme Court held "that Article I, Section 8 affords greater protection to our citizens than the Fourth Amendment, and reaffirm our prior decisions: the Pennsylvania Constitution requires both a showing of probable cause and exigent circumstances to justify a warrantless search of an automobile." *Id*. "Obtaining a warrant is the default rule. If an officer proceeds to conduct a warrantless search, a reviewing court will be required to determine whether exigent circumstances existed to justify the officer's judgment that obtaining a warrant was **not** reasonably practicable." *Id.* (emphasis original). The Court remanded the case to the trial court, noting that the testimony was not directed at the exigencies of the situation.

The trial court denied Lutz's motion for reconsideration determining that *Alexander* did not impact its ruling because its decision did not "rest upon the analytical underpinnings of the automobile exception to the warrant requirement, but rather upon an application of the plain view and search

incident to arrest exceptions to the warrant requirement." (Trial Court Opinion, 3/17/20, at 3).

The case proceeded to a jury trial where Lutz was found guilty of possession of drug paraphernalia and possession of a controlled substance. The trial court found Lutz guilty of possession of a small amount of marijuana and not guilty of the DUI offenses.[5] On May 18, 2021, the trial court imposed a sentence of one year of probation on the possession of drug paraphernalia conviction and a $150.00 fine on the possession of a small amount of marijuana charge. Lutz timely appealed and she and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b).

## II.

On appeal, Lutz contends the trial court erred in denying her motion to suppress. She challenges the trial court's application of the plain view doctrine and claims Sergeant Nunemacher unlawfully seized the metal pipe from her vehicle because he was not justified in entering the car without a warrant. Lutz also contests the trial court's finding that Sergeant Nunemacher properly searched her vehicle as incident to her arrest on suspicion of DUI.[6]

_____

[5] Pursuant to a stipulation by the parties, the trial court vacated the simple possession jury conviction in light of its bench conviction on the possession of a small amount of marijuana charge.

[6]

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the

*(Footnote Continued Next Page)*

## A.

"The law is clear that citizens are protected by both federal and state constitutional provisions from unreasonable searches and seizures. U.S. Const. Amend. IV; Pa. Const. Art. I, § 8." ***Martin***, ***supra*** at 1228 (case citation omitted). A warrantless search or seizure is **presumptively unreasonable** under the Fourth Amendment and Article I, § 8, subject to a few established, well-delineated exceptions. ***See id.*** Such exceptions include "the consent exception, the plain view exception, the inventory search exception, the exigent circumstances exception, the automobile exception ... the stop and frisk exception, and the search incident to arrest exception."

_____

suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

***Commonwealth v. Martin***, 253 A.3d 1225, 1227–28 (Pa. Super. 2021) (citation omitted). Our scope of review of a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. ***See Commonwealth v. Bumbarger***, 231 A.3d 10, 15 (Pa. Super. 2020), *appeal denied*, 239 A.3d 20 (Pa. 2020).

*Commonwealth v. Simonson*, 148 A.3d 792, 797 (Pa. Super. 2016) (citation omitted).

**B.**

We first address Lutz's contention that her Fourth Amendment and Article 1, § 8 rights were violated when Sergeant Nunemacher seized the metal pipe from the driver's seat of her vehicle. She argues that the plain view exception did not relieve him of his obligation to obtain a search warrant.

"The plain view doctrine provides that evidence in plain view of the police can be seized without a warrant." *Commonwealth v. Luczki*, 212 A.3d 530, 546 (Pa. Super. 2019) (citation omitted). "This doctrine permits a valid warrantless seizure of an item where: (1) the police have not violated the Fourth Amendment in arriving at the location from which the item could be viewed; (2) the item is in plain view; (3) the incriminating character of the item is immediately apparent; and (4) the police have a lawful right of access to the item itself." *Id.* (citation omitted).

"There can be no reasonable expectation of privacy in an object that is in plain view." *Id.* at 547 (citation omitted). "There is no reason a police officer should be precluded from observing as an officer what would be entirely visible to him as a private citizen." *Id*. (citation omitted). To assess whether the incriminating nature of an object was immediately apparent to the police officer, reviewing courts must consider the totality of the circumstances. *See*

*id.* "In viewing the totality of the circumstances, the officer's training and experience should be considered." *Id.* (citation omitted).

In this case, it is clear from the record that Sergeant Nunemacher was lawfully outside of Lutz's still-running vehicle when he first observed the pipe in plain view on the driver's seat from the vantage point of the open car door and window. The legality of the seizure of the pipe hinges on whether its incriminating character was readily apparent and whether the Sergeant had a lawful right of access to the pipe itself. *See Luczki*, *supra* at 546.

An officer can never be 100 percent certain that an item in plain view is incriminating, but his belief must be supported by probable cause. *See Commonwealth v. Turner*, 982 A.2d 90, 92 (Pa. Super. 2009), *appeal denied*, 992 A.2d 889 (Pa. 2010). A determination of probable cause requires only a probability and not a *prima facie* showing of criminal activity applying a totality of the circumstances test. *See Commonwealth v. Grooms*, 247 A.3d 31, 38 (Pa. Super. 2021). "Thus, probable cause is a practical, nontechnical conception: it is a fluid concept—turning on the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules." *Id.* (citation omitted).

Indicia of illegal marijuana use forming the basis of probable cause has been impacted by the enactment of the Medical Marijuana Act (MMA) in

Pennsylvania.[7] ***Commonwealth v. Barr***, 2021 WL 6136363 (Pa. filed Dec. 29, 2021), a case involving the "plain smell" doctrine rather than "plain view," is instructive and was not available to the trial court at the time it decided Lutz's suppression motion. In **Barr**, our Supreme Court held that "the odor of marijuana alone does not amount to probable cause to conduct a warrantless search of a vehicle but, rather, may be considered as a factor in examining the totality of the circumstances." ***Id.*** at *15.

In that case, Pennsylvania State Police troopers pulled over a vehicle driven by the defendant's wife for a Vehicle Code violation and they detected the smell of burnt marijuana as they approached the vehicle. The troopers stated their intention to search the vehicle based upon probable cause from the odor of marijuana, whereupon the defendant, who was in the passenger seat of the vehicle, presented a medical marijuana identification card. After the troopers recovered a firearm and marijuana from the vehicle, the defendant was charged with person not to possess a firearm and possession of a small amount of marijuana.

In analyzing the impact of the MMA on probable cause assessments, the Court found "that the MMA makes abundantly clear that marijuana no longer is *per se* illegal in this Commonwealth. Accordingly, the enactment of the

---

[7] The General Assembly enacted the MMA, 35 P.S. §§ 10231.101—10231.2110. with an effective date of May 2016. It became effective approximately one year prior to the search of Lutz's vehicle.

- 11 -

MMA eliminated this main pillar supporting the 'plain smell' doctrine as applied to the possession or use of marijuana." *Id.* at *12. However,

> the [Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§ 780-101—144] still renders possession of marijuana illegal for those not qualified under the MMA. Thus, the smell of marijuana indisputably can still signal the possibility of criminal activity. Given this dichotomy, we conclude that the odor of marijuana may be a factor, but not a stand-alone one, in evaluating the totality of the circumstances for purposes of determining whether police had probable cause to conduct a warrantless search.
>
> In so doing, we emphasize that the realization that a particular factor contributing to probable cause may involve legal conduct does not render consideration of the factor *per se* impermissible, so long as the factor is considered along with other factors that, in combination, suggest that criminal activity is afoot. As recognized by the Commonwealth, the totality-of-the-circumstances analysis encompasses the consideration of factors that may arguably be innocent in nature.

*Id.* at *13 (case citation omitted).

The Supreme Court determined that because the record supported the trial court's conclusion that the troopers searched the car in question based solely on the odor of marijuana coming from it, the trial court properly granted the defendant's motion to suppress. *See id.* at *15.

Here, in contrast to *Barr*, the suppression record establishes that at the time Sergeant Nunemacher approached Lutz's still-running vehicle, several factors contributed to his belief that there was probable cause that she had engaged in driving under the influence of alcohol or a controlled substance. He smelled the odor of alcohol on her breath when she spoke and her speech was slow and slurred. Lutz walked with a sluggish gait, wandered off while

- 12 -

she was speaking with him and failed three basic coordination tests. She referenced no medical marijuana identification card and she was parked in a location known to police as frequented by drug users.

As previously noted, Sergeant Nunemacher acknowledged that the metal pipe could be used to smoke tobacco, but unequivocally opined that "objects like this in my training and experience are commonly makeshift pipes used for drug use." (*Id.* at 17). Based on the totality of the circumstances, we conclude Sergeant Nunemacher's belief that the pipe in plain view was readily discernible as incriminating in nature provided ample probable cause. *See Turner*, *supra* at 92, 94 (holding defendant cannot claim legitimate expectation of privacy in shotgun shell laying on front passenger seat clearly visible from outside of an unlocked, unoccupied vehicle).

Because, in addition to probable cause, *Alexander* requires exigent circumstances to enter the car, we now turn to the question of whether Sergeant Nunemacher had a lawful right of access to go into the car and seize the pipe itself without getting a warrant. In this case, the still-running vehicle and open car door fulfilled the requirement of exigent circumstances because the Sergeant needed to enter the car to turn off the ignition. Once he entered the vehicle to safely secure the scene, he had lawful access to the pipe sitting on the driver's seat and seizure of it was lawful under the plain view doctrine, as informed by *Alexander*.

**C.**

We next address Lutz's challenge to the trial court's finding that Sergeant Nunemacher properly searched her vehicle as incident to her arrest on suspicion of DUI. Lutz contends that because she was handcuffed and detained by two police officers outside of the immediate vicinity of her vehicle at the time Sergeant Nunemacher conducted the search and she could not access the contents of her car, the search incident to arrest exception to the warrant requirement does not apply. We agree.

"The search incident to arrest exception allows arresting officers, in order to prevent the arrestee from **obtaining a weapon** or **destroying evidence**, to search both **the person** arrested and the area within his **immediate control**." *Commonwealth v. Simonson*, 148 A.3d 792, 799 (Pa. Super. 2016) (citation omitted; emphasis added). Furthermore, this "exception to warrantless searches permits police to search an arrestee's **person** as a matter of course, without a case-by-case adjudication of whether such search is likely to protect officer safety or evidence." *Commonwealth v. Yorgey*, 188 A.3d 1190, 1198 (Pa. Super. 2018) (*en banc*) (emphasis added; citation omitted). "Stated another way, in all cases of lawful arrests, police may fully search the **person** incident to the arrest." *Commonwealth v. Ingram*, 814 A.2d 264, 272 (Pa. Super. 2002) (emphasis added; citation omitted).

In this case, Sergeant Nunemacher searched Lutz's **vehicle** incident to her arrest on suspicion of DUI. Thus, the relevant search and seizure did not involve "**the person** arrested [or] the area within h[er] **immediate control**." *Simonson*, *supra* at 799 (emphasis added). While Lutz was in the general vicinity of her car at the time of the search, she was handcuffed and in the custody of two police officers. There was no risk that she would obtain a weapon from her vehicle or destroy evidence indicating that she was intoxicated. It was also not in plain view. Because the search at issue was not related to Lutz's person whatsoever, it was not lawful as incident to her arrest; therefore, this exception did not operate to relieve police of the default requirement to seek a warrant to search the entire vehicle.

In sum, our review of the record in conjunction with the foregoing case law supports Lutz's claim that the evidence of the marijuana contained in the eyeglass case under the driver's seat found during the search incident to her arrest should have been suppressed. However, the evidence of the metal pipe was properly admitted by the trial court under the plain view doctrine. Accordingly, we affirm the suppression order in part as to the metal pipe but reverse its denial of Lutz's motion to suppress the marijuana in the eyeglass case and remand for further proceedings consistent with this Opinion.

Suppression Order affirmed in part and reversed in part. Judgment of sentence vacated. Case remanded for further proceedings. Jurisdiction relinquished.

- 15 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/14/2022