J-S37027-22

2022 PA Super 216

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MARKEE DAVIS :
:
Appellant : No. 30 EDA 2022

Appeal from the Judgment of Sentence Entered November 23, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002484-2020

BEFORE:  BOWES, J., LAZARUS, J., and OLSON, J.

OPINION BY LAZARUS, J.:                    **FILED DECEMBER 16, 2022**

Markee Davis appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after being convicted, following a stipulated non-jury trial, of various firearms charges. On appeal, Davis challenges the partial denial[1] of his pre-trial motion to suppress a warrantless vehicle search. After careful review, we affirm.

In January 2020, Davis was arrested and charged with possession with intent to deliver,[2] firearms not to be carried without a license,[3] possession of

---

[1] The court suppressed marijuana and packaging material recovered during the stop, as well as custodial statements Davis made to police officers.

[2] 35 P.S. § 780-113(a)(30).

[3] 18 Pa.C.S § 6106(a)(1).

a controlled substance,[4] possession of drug paraphernalia,[5] carrying firearms publicly in Philadelphia,[6] terroristic threats,[7] obliterating mark of identification,[8] and resisting arrest.[9]  The charges stemmed from a traffic stop conducted on the evening of January 16, 2020, on 22nd Street in Philadelphia. Davis, the driver of a dark blue Acura with dark-tinted windows, was observed by Philadelphia Police Officers Daniel Levitt and Paul Narrigan traveling southbound at a high rate of speed, passing cars, driving on the road's shoulder, and then, without using his vehicle's turn signal, making a hard right turn onto Allegheny Avenue.  N.T. Suppression Hearing, 8/12/21, at 11.  The officers, in a marked patrol vehicle, activated their lights and sirens to effectuate a traffic stop.  *Id.* at 12.  Davis pulled the car over and illegally parked it on the side of Allegheny Avenue.  *Id.* at 26.[10]

---

[4] 35 P.S. § 780-113(a)(16).

[5] *Id.* at § 780-113(A)(32).

[6] 18 Pa.C.S. § 6108.

[7] *Id.* at § 2706(a)(1).

[8] *Id.* at § 6117(a).

[9] *Id.* at § 5104.

[10] Davis does not contest the legality of the car stop.

Officer Levitt, a ten-year veteran of the Northwest Division of the Philadelphia Police Department,[11] testified that he approached Davis' vehicle and asked him for his driver's license, vehicle registration, and insurance information. *Id.* Davis was unable to produce any of the requested documents. *Id.* Officer Levitt testified that he noticed Davis was "breathing very heavy, shaking, fast talking, [and] appeared very nervous." *Id.* Officer Levitt also testified that there was a "very strong odor of marijuana coming from the vehicle[12] and [that] some marijuana and packaging[13] [were] in plain view on the passenger seat in the center console area" of the car. *Id.* at 12-13. At this point, Officer Levitt called a supervisor, *id.* at 13, and asked Davis to step out of the vehicle so he could identify Davis and determine who owned the vehicle. *Id.* Despite Officer Levitt's request to exit the car, Davis "attempted to put the car in gear and drive away." *Id.* (Officer Levitt

---

[11] Officer Levitt testified that he had been on the force for at least 10 years at the time of the incident, having worked his entire career in the Northwest Division, with three of those years in the Northwest Task Force. *Id.* at 22-23. He also testified that he had made thousands of vehicle stops and countless arrests for firearms, possession of marijuana, assault, and homicide. *Id.* at 23-24. Many of those arrests occurred in the exact area where he and Officer Narrigan stopped Davis, which Officer Levitt testified was "one of the most violent districts in the city." *Id.* at 24.

[12] Recently, in **Commonwealth v. Barr**, 266 A.3d 25 (Pa. 2021), our Supreme Court held that the "odor of marijuana may be a factor, but not a stand-alone one, in evaluating the totality of the circumstances for purposes of determining whether police had probable cause to conduct a warrantless search." *Id.* at 41.

[13] Officer Levitt testified the packaging looked like "[p]lastic tubes of sorts." *Id.* at 13.

testifying Davis "put his hand on the shifter and tried to put it into drive"). At that point, Officer Levitt opened the driver's side door, grabbed Davis, and pulled him out of the vehicle. *Id.* at 13-14.

Officers Levitt and Narrigan escorted Davis to their patrol vehicle, where Davis was placed in the back seat of the cruiser, without handcuffs, so that the officers could further investigate the matter. *Id.* at 14. Officer Levitt returned to Davis' vehicle to obtain the car's vehicle identification number (VIN) and determine if it matched the license plate number from the motor vehicle record system. *Id.* As he approached the vehicle, which had its driver's door still open, he saw a black semi-automatic handgun on the floor sticking out from underneath the driver's side seat. *Id.* at 14-15.[14] At that point, Officer Levitt returned to the police cruiser to ask Davis if he had a permit to carry the gun; Davis indicated he did not have a permit.[15] *Id.* at 15. Officer Narrigan also checked the police record system to verify whether Davis had a permit to carry a firearm, which confirmed Davis did not. *Id.* at 16. Officer Levitt then attempted to place Davis in handcuffs, but he resisted, causing a "small scuffle in the back of the police car." *Id.* at 16. Officer Levitt

---

[14] The handgun was loaded with one live round in the chamber and eleven rounds in the magazine. *See* Property Receipt, Commonwealth Exhibit 1, 1/16/20.

[15] This statement was suppressed by the trial court. However, Davis "accepts th[e] proposition [that O]fficer [Narrigan] had independently verified the lack of a license thr[ough] police channels" and that it may be used to justify the second prong of the plain view doctrine—that it was immediately apparent to the officer that the firearm was incriminating. *See* Appellant's Brief, at 16-17.

and Davis wrestled; the officer "struck [Davis] with his fist a few times in the head," and was then able to place Davis in handcuffs. *Id.*

Once Officer Levitt's supervisor arrived on the scene, Officer Levitt notified the supervisor about the odor of marijuana emanating from Davis' vehicle and the gun on the floor of the car. *Id.* at 17. The officers then recovered the gun and conducted a search of the vehicle, during which they recovered a large amount of marijuana stowed in various areas of the car, including the trunk. *Id.* The officers subsequently transported Davis back to the police station. *Id.* During the car ride, Davis "did not stop cursing, calling [Officer Levitt] names, yelling" and told Officer Levitt that "he just should have shot [Officer Levitt]." *Id.*

On January 27, 2020, Davis filed a pre-trial motion to suppress physical evidence—the handgun, marijuana, and drug paraphernalia uncovered from the warrantless car search—and statements made by Davis—claiming that Davis' arrest and the search of the vehicle were illegal where they were conducted without probable cause. Suppression Motion, 1/27/20, at 1. On August 12, 2021, the court held a suppression hearing. On September 8, 2021, the trial court entered an order granting in part (Davis' statements and marijuana found in car trunk) and denying in part (handgun) Davis' suppression motion. The court denied suppression of the handgun, concluding that Officer Levitt saw the object in plain view during his investigation of the matter.

Following a stipulated bench trial, Davis was convicted of the firearms' offenses. On November 23, 2021, Davis was sentenced to serve 11½-23 months in prison, with a three-year probation tail, for carrying a firearm without a license and a concurrent sentence of 6-12 months in prison, with a one-year probationary tail, for publicly carrying a firearm in Philadelphia. On November 30, 2021, the court amended its sentence and granted Davis' motion for immediate parole.

Davis filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[16] Davis raises the following issue for our consideration:

> [Whether t]he [trial] court erred when it denied [Davis' m]otion to [s]uppress contrary to Pennsylvania Supreme Court mandates when it found a warrantless search of [Davis'] vehicle was [c]onstitutional and within the bounds dictated by ***Commonwealth v. Alexander***[, 243 A.3d 177 (Pa. 2020),] in that [o]fficers must have both probable cause and exigent circumstances, when it found exigency existed because they had to remove a car from where they exercised a traffic stop.

Appellant's Brief, at 7.

When reviewing an order denying a motion to suppress evidence, we must determine whether the trial court's factual findings are supported by the evidence of record. ***Commonwealth v. Blair***, 860 A.2d 567, 571 (Pa. Super.

---

[16] On December 15, 2021, trial counsel, Gary S. Silver, Esquire, filed a motion to withdraw. The court granted counsel's request and, on December 30, 2021, appointed W. Christ Montoya, Esquire, to represent Davis on appeal. Attorney Montoya filed a motion for extension within which to file Davis' Rule 1925(b) statement, which the court granted on January 24, 2022.

2004). "When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the defense as remains uncontradicted when read in the context of the record." ***Commonwealth v. Bumbarger***, 231 A.3d 10, 15 (Pa. Super. 2020). If the evidence supports the trial court's findings, we are bound by them and may reverse only if the legal conclusions drawn therefrom are erroneous. ***Blair***, ***supra*** at 571.

On appeal, Davis argues that under ***Alexander***, ***supra***, the Commonwealth did not have the requisite exigent circumstances to justify a warrantless search of Davis' vehicle where Officer Levitt, under the guise of plain view, did not have a lawful right of access to the gun. ***See*** Appellant's Brief, at 16-17; N.T. Suppression Hearing, 8/12/21, at 7. Specifically, Davis claims that there was no dangerous situation or "urgent need" to move the car to a legal parking space to support the officers' claim that exigent circumstances existed. ***Id.*** at 7-8.

In ***Alexander***, ***supra***, our Supreme Court overruled precedent established in ***Commonwealth v. Gary***, 91 A.3d 102 (Pa. 2014), and held that Article I, Section 8 of the Pennsylvania Constitution requires *both* a showing of probable cause *and* exigent circumstances to justify a warrantless search of an automobile. ***Id.*** at 118. Here, the police justified seizure of the handgun pursuant to an exception to the warrant requirement, the plain view doctrine. The plain view doctrine allows the admission of evidence seized without a warrant when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating;

and (3) *the officer has a lawful right of access to the object*. ***See Commonwealth v. Collins***, 950 A.2d 1041, 1045 (Pa. Super. 2008) (en banc) (citation omitted) (emphasis added). "Where police officers observe incriminating-looking contraband in plain view in a vehicle from a lawful vantage-point, the lack of advance notice and opportunity to obtain a warrant provides the officers with a lawful right of access to seize the object in question." ***Commonwealth v. Brown***, 23 A.3d 544, 557 (Pa. Super. 2011) (en banc).

Recently, in ***Commonwealth v. Lutz***, 270 A.3d 571 (Pa. Super. 2022), our Court had the opportunity to reconsider, in light of ***Alexander***, a trial court's denial of a defendant's motion to suppress drug paraphernalia (metal pipe commonly used for smoking marijuana) seized by an officer who saw the pipe in plain view, as the driver's-side door was open with the window down, on the driver's seat of the defendant's still-running automobile. ***Lutz***, ***supra*** at 575. In denying the defendant's suppression motion, the trial court noted that "***Alexander*** did not impact its ruling because its decision did not 'rest upon the analytical underpinnings of the automobile exception to the warrant requirement, but[,] rather[,] upon an application of the plain view and search incident to arrest[17] exceptions to the warrant requirement.'" ***Lutz***, ***supra*** at 576 (citation omitted).

_____

[17] The search incident to arrest was used to justify the search of defendant's car *after* the metal pipe was seen in plain view and seized by the sergeant. *(Footnote Continued Next Page)*

The defendant in **Lutz** contended, like Davis does in the instant appeal, that the court erred in denying her suppression motion because the officer unlawfully seized the metal pipe from her vehicle because "he was not justified in entering the car without a warrant" and "the plain view exception did not relieve him of his obligation to obtain a search warrant." **Id.** at 576-77. On appeal, our Court specifically addressed the question of whether, in light of the fact that **Alexander** requires exigent circumstances to enter the car, the officer "had a lawful right to access [under the plain view doctrine] to go into the car and seize the pipe [] without getting a warrant." **Id.** at 579. In concluding suppression of the pipe was not warranted, our Court stated "[i]n this case, the still-running vehicle and open car door fulfilled the requirement of exigent circumstances because the Sergeant needed to enter the car to turn off the ignition. Once he entered the vehicle to safely secure the scene, he had lawful access to the pipe sitting on the driver's seat and seizure of it was lawful under the plain view doctrine." **Id.**

More recently, in **Commonwealth v. McMahon**, 280 A.3d 1069 (Pa. Super. 2022), our Court reviewed a trial court's partial denial of a defendant's motion to suppress drugs uncovered during a traffic stop. While the trial court suppressed three bags of marijuana found in the console of the defendant's

---

**Id.** at 575. During that search, the police recovered an eyeglass case containing suspected marijuana from underneath the driver's seat and a bag containing a blue pill and a cut straw from the area where the driver's seat meets the center console. **Id.**

vehicle, it denied suppression of burnt marijuana cigarettes[18] that the police recovered from the center cup holder of the vehicle. The defendant, like Davis, relied on **Alexander** to claim that "the officers had no lawful right to access the interior of the car to seize th[e cigarettes]." **McMahon**, **supra** at 1073. Our Court disagreed, stating:

> Appellant relies on **Alexander** to support his claim that exigent circumstances were necessary for the lawful seizure of the marijuana cigarettes. Appellant's Brief at 24-25. However, **Alexander** addresses the automobile exception to the warrant requirement, not the plain view exception. **Alexander**, 247 A.3d at 181; **see also Simonson**, 148 A.3d at 797.
>
>> Our Supreme Court has expressly recognized that incriminating objects plainly viewable [in the] interior of a vehicle are in plain view and, therefore, subject to seizure without a warrant. This doctrine rests on the principle that an individual cannot have a reasonable expectation of privacy in an object that is in plain view.
>
> **Commonwealth v. Turner**, [] 982 A.2d 90, 92 (Pa. Super. 2009) (citations and quotation marks omitted). The Pennsylvania Supreme Court has distinguished the limited intrusion of the seizure of evidence in plain view from the greater intrusion of an automobile search. **McCree**, 924 A.2d at 627.
>
> *   *   *
>
> *As discussed above, **Alexander** did not involve plain view. Appellant points to nothing in **Alexander** which modified the plain view doctrine, and we decline to apply **Alexander**.* Rather,
>
>> "where police officers observe incriminating-looking contraband in plain view in a vehicle from a lawful vantage-point, the lack of advance notice and opportunity to obtain

---

[18] The **McMahon** court also denied suppression of Oxycodone pills found during a search incident to defendant's arrest. However, defendant did not challenge that ruling on appeal.

a warrant provides the officers with a lawful right of access to seize the object in question." ***Commonwealth v. Miller***, [] 56 A.3d 424, 429 (Pa. Super. 2012) (quoting ***Commonwealth v. Brown***, [] 23 A.3d 544, 557 (Pa. Super. 2011) (en banc)). Here, the officers had a lawful right of access to the vehicle where [a]ppellant was under arrest, and in securing his vehicle, they had no advance notice and opportunity to obtain a warrant with respect to the bags they observed on the driver's seat and console of the vehicle. ***See***, ***e.g., Miller***, 56 A.3d at 430-31 (holding police officer's warrantless seizure of beer bottles from inside appellant's vehicle was lawful under plain view exception where incriminating nature of bottles was immediately apparent and officer lacked advance notice and an opportunity to obtain warrant before commencing search).

[***Commonwealth v.***] ***Heidelberg***, 267 A.3d [492,] 505 [(Pa. Super. 2021) (en banc)] ([]citation omitted).

***McMahon***, ***supra*** at 1073-74 (emphasis added).

Finally, most recently, in ***Commonwealth v. Smith***, 2022 PA Super 187 (Pa. Super. filed Nov. 4, 2022), our Court reversed the suppression of a gun found during a motor vehicle stop where an officer observed the gun, through an open passenger door window, in plain view on the rear floorboard of the defendant's car. ***Id.*** at *2. Like Davis, the defendant was charged with various firearms' offenses. On appeal, the Commonwealth argued that pursuant to the plain view doctrine, the firearm evidence was admissible where the officers were permitted to restrain the defendant and access the gun for their own safety. ***Id.*** at *3. Although the Court acknowledged the holding in ***Alexander***, ***supra***, it found that "the decision in ***Alexander*** does not address the plain view exception or any alterations to its requirements." ***Id.*** at *6. Specifically, the Court opined that "where the circumstances permit

an application of the plain view exception, we need not apply **Alexander**."
**Id.**

Thus, to the extent that Davis claims **Alexander** requires the Commonwealth to prove exigent circumstances where the officers have lawfully seized an object under the plain view doctrine, he is mistaken.[19] **See Smith**, **supra** at *5 (when plain view applies, **Alexander** not applicable); **McMahon**, **supra** at 174 (declining to find **Alexander** modified plain view doctrine); **see also Lutz**, **supra** at 576 (concluding **Alexander** did not impact Court's ruling because decision did not "rest upon the analytical underpinnings of the automobile exception to the warrant requirement," but upon, among other things, application of plain view exception to warrant requirement).[20]

With regard to the first and second prongs of the plain view doctrine, Davis concedes that Officer Levitt saw the gun from a lawful vantage-point (public sidewalk) and that the incriminating nature of the contraband was immediately apparent to the officer where a police record check revealed that Davis did not have a permit to carry the firearm. **Collins**, **supra**.

---

[19] Although the trial court concluded that exigent circumstances existed in the present case to further justify the warrantless seizure of the gun, it is well settled that we may affirm the trial court on different grounds. **Commonwealth v. Thompson**, 778 A.2d 1215, 1223 n.6 (Pa. Super. 2001).

[20] The Supreme Court in **Alexander** also acknowledged the defendant's claim that "the number of other exceptions to the warrant requirement often present in automobile cases[], including voluntary consent, exigent circumstances that make it too difficult to obtain a warrant, and *plain view*." **Alexander**, **supra** at 192 (emphasis added).

With regard to the third prong of the doctrine, we conclude that the Commonwealth proved that Office Levitt had a lawful right of access to the gun where Davis was still under investigation, and, in securing Davis' vehicle that was illegally parked on the side of Allegheny Avenue with the driver's door open, the officers had no advance notice and opportunity to obtain a warrant with respect to the gun they observed under the car's driver's seat. *See Brown*, *supra* at 557 (third prong of plain view doctrine satisfied where officer observed, from legal vantage point (public street), what appeared to be incriminating evidence (black handgun), in plain view on floor of defendant's minivan behind driver's seat, and police had no advanced notice of defendant's decision to rob store or opportunity to obtain warrant before observing gun in plain view; under such circumstance, not reasonably practicable to expect police to obtain warrant); *see also Heidelberg*, *supra* (officers had lawful right of access to vehicle where defendant was under arrest, and, in securing defendant's illegally-parked vehicle, they plainly saw, through open driver's side window, contraband on driver's seat and center console, and officers had no advance notice and opportunity to obtain warrant with respect to contraband they observed).

Thus, because the trial court's factual findings are supported by the evidence of record and its legal conclusions are correct, *Blair*, *supra*, we conclude that the trial court did not abuse its discretion in denying suppression of the handgun.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/16/2022</u>