J-A21024-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MARQUESE COLLINS | : | No. 1574 EDA 2022 |

Appeal from the Order Entered June 7, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000391-2021

BEFORE:  BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:                **FILED NOVEMBER 30, 2023**

The Commonwealth appeals from the June 7, 2022 Order entered in the Philadelphia Court of Common Pleas that granted Appellee Marquese Collins' motion to suppress evidence seized without a warrant during a traffic stop. After careful review, we affirm.

**A.**

The relevant factual and procedural history is as follows.  On January 24, 2020, at approximately 9:00 PM, Philadelphia Police Officer Anthony Mooney was on patrol with his partner near the 2900 block of 22nd Street. They observed Appellee driving a Dodge sedan accompanied by a passenger, D'Angelo Ray Thomas.  The vehicle had a Pennsylvania registration sticker, but a New Jersey license plate.  Officer Mooney ran the license plate and found that it was registered to a Cadillac, not a Dodge.  The officers initiated a traffic stop to investigate these registration anomalies.

Upon request, Appellee produced his driver's license but was unable to provide his registration papers, despite looking in several places around the driver's seat.[1] Officer Mooney, suspecting that the vehicle may have been stolen, asked Appellee to step out of the car and placed him in the back of the police car, leaving Mr. Thomas in the car. Officer Mooney then searched under the driver's seat and in the door pocket, claiming to be searching for evidence of ownership.[2]

Officer Mooney next stepped out of the vehicle and looked through the rear driver's side window from outside the car with his flashlight. He saw an infant in a car seat and a firearm laying on the floor between the driver's seat and the back seat. Officer Mooney's partner then removed Mr. Thomas from the vehicle. "[W]ithin the next couple of minutes," Officer Mooney recovered a firearm. N.T. Hr'g, 6/7/22, at 13. After calling a detective, the officers arrested Appellee. The infant remained in the vehicle until Appellee's parents arrived and the officers released her and Appellee's vehicle into their care.

On January 25, 2020, the Commonwealth charged Appellee with violations of the Uniform Firearms Act.[3] On June 7, 2022, prior to the start of

_____

[1] At some point during the stop, Appellant informed the officers that he had recently purchased the vehicle. N.T. Hrg., 6/7/22, at 28.

[2] The Commonwealth conceded that Officer Mooney's initial search of the front of the car was unlawful. N.T. Hr'g at 38.

[3] 18 Pa.C.S. §§ 6106 and 6108. The Commonwealth did not file "any charges against [Appellant] related to a stolen vehicle." N.T. Hr'g. at 24.

his waiver trial, Appellee moved to suppress the firearm. The court immediately proceeded to a suppression hearing.

Officer Mooney was the sole witness at the suppression hearing. He testified that when he spoke with Appellee, Appellee appeared "extremely nervous," but he did not describe any other behavior to support his conclusion that Appellee was nervous. N.T. Hr'g at 10. Officer Mooney further testified on cross-examination that Appellee was cooperative and compliant, and even seemed surprised that officers found a firearm.

The court granted the Motion to Suppress. The Commonwealth filed a timely appeal pursuant to Pa.R.A.P. 311(d).[4] Both the Commonwealth and the suppression court complied with Pa.R.A.P. 1925.

The Commonwealth raises the following issue for our review:

> Did the lower court erroneously suppress a gun police seized after observing it in plain view, and exigent circumstances existed?

Commonwealth's Br. at 4.

**B.**

Our review of a grant of a suppression motion is limited to determining "whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Carmenates**, 266 A.3d 1117, 1122-23 (Pa. Super. 2021) (*en banc*) (citation

---

[4] Rule 311(d) provides that "the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d).

omitted). We defer to the suppression court's factual findings if they are supported by the record. **Commonwealth v. Batista**, 219 A.3d 1199, 1206 (Pa. Super. 2019). However, we give no such deference to the suppression court's legal conclusions and, instead, review them *de novo*. **Id.** An appellate court can affirm a valid judgment for any reason supported by the record. **Commonwealth v. Hamlett**, 234 A.3d 486, 488 (Pa. 2020).

"We may only consider evidence presented at the suppression hearing." **Carmenates**, 266 A.3d at 1123 (citation omitted). Additionally, "[b]ecause the defendant prevailed on this issue before the suppression court, we consider only the defendant's evidence and so much of the Commonwealth's evidence as remains uncontradicted when read in the context of the suppression record as a whole." **Id**. (citation omitted).

Once a defendant files a motion to suppress, "it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." **Commonwealth v. Wallace**, 42 A.3d 1040, 1047–48 (Pa. 2012) (citing Pa.R.Crim.P. 581(H)).

In his Motion to Suppress, Appellant challenged the search of the vehicle and the legality of his arrest. "Both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." **Commonwealth v. Heidelberg**, 267 A.3d 492, 502 (Pa. Super. 2021),

*appeal denied*, 279 A.3d 38 (Pa. 2022) (citation omitted). As a general rule, "a warrant stating probable cause is required before a police officer may search for or seize evidence[,]" unless one of "a few clearly delineated exceptions" applies. *Id.* (citations omitted)

There are two exceptions to the warrant requirement that the Commonwealth raises in its appeal: the plain view exception and, in the alternative, the automobile exception.

"The plain view doctrine allows the admission of evidence seized without a warrant when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object." *Commonwealth v. Davis*, 287 A.3d 467, 471 (Pa. Super. 2022) (emphasis omitted). All three prongs must be satisfied to support a warrantless seizure based on the plain view doctrine. *Commonwealth v. Miller*, 56 A.3d 424, 431 (Pa. Super. 2012)

Here, we confine our review to the second prong: whether it is immediately apparent that the object is incriminating. In determining whether the incriminating nature of an object is immediately apparent to a police officer, courts consider the totality of the circumstances. *Commonwealth v. Smith*, 285 A.3d 328, 333 (Pa. Super. 2022).

"An officer can never be one hundred percent certain that [an object] in plain view is incriminating, but his belief must be supported by probable

cause." *Id.* (citation omitted). Probable cause, in turn, "requires that the facts available to the officer would warrant a [person] of reasonable caution in the belief[] that certain items may be contraband or stolen property or useful as evidence of a crime." *Id.* (citation omitted). However, "mere suspicion or conjecture is insufficient" to establish probable cause. *Commonwealth v. Mazzochetti*, 445 A.2d 1214, 1217 (Pa. Super. 1982).

Absent other indicia of criminality, possession of a firearm is insufficient to establish probable cause that the defendant possesses the firearm illegally. *See Commonwealth v. Hicks*, 208 A.3d 916, 936 (Pa. 2019) (holding that mere possession of a firearm is insufficient to establish reasonable suspicion). Rather, a properly licensed individual may carry a firearm "in public, openly or concealed, within a vehicle or without, throughout every municipality in Pennsylvania." *Id.* at 926. Thus, the Commonwealth "cannot simply point to [carrying a firearm,] conduct in which hundreds of thousands of citizens lawfully may engage, then deem that conduct to be presumptively criminal." *Id.* at 940.

## C.

The Commonwealth first argues that the suppression court erroneously granted the Motion to Suppress based on its finding that the firearm was not in plain view. Commonwealth's Br. at 8. Specifically, the Commonwealth maintains that all three prongs of the plain view test were met: (1) Officer Mooney viewed the firearm from a lawful vantage point (from outside the car)

after a lawful stop; (2) police had probable cause to believe that Appellee stole the car using the firearm; and (3) when the first and second prongs are met, "the lack of advance notice and opportunity to obtain a warrant provide[d] the officers a lawful right of access to seize the [firearm]." *Id.* at 10-12 (quoting *Commonwealth v. Brown*, 23 A.3d 544, 557 (Pa. Super. 2011) (*en banc*)).

As we find it determinative of the issue on appeal, we focus on the Commonwealth's argument regarding the second prong of the plain view test.[5] The Commonwealth argues that Officer Mooney had probable cause to believe the firearm was contraband because the totality of the circumstances indicated that Appellee had used the firearm to steal the vehicle. Commonwealth's Br. at 11. In support, the Commonwealth notes that (1) Officer Mooney believed the vehicle might have been stolen, (2) Appellee was "extremely nervous," and (3) the firearm was "haphazardly" tossed onto the floor. *Id.* It posits that these facts, taken together, "support the conclusion that [the firearm] had likely been used to help accomplish the theft of the car[.]" *Id.*

---

[5] The trial court concludes that the Commonwealth failed to meet the first prong because the officer moved the seat and thus, the gun was not in plain view. The record, however, does not support this factual finding of the trial court. This does not, however, change our decision to affirm the decision of the trial court because as discussed above, the evidence does not support the second prong of the test and we can affirm a trial court on any basis. *Hamlett*, 234 A.3d at 488.

In addressing this argument, the trial court observed that the officers "had no knowledge or reason to suspect criminal activity due to the presence of a firearm." Trial Ct. Op., at 7. Our review of the record supports the court's conclusion.

First, even if Appellee's inability to locate the vehicle's documents gave the officers reason to suspect that the vehicle had been stolen, the officer's mere speculation that the car might have been stolen does not establish probable cause that the firearm in the vehicle was used in a crime. *Mazzochetti*, 445 A.2d at 1217. [6]

Next, while Officer Mooney baldly testified that Appellee was "extremely nervous," this Court has recognized that nervousness is expected during encounters with police. *See, e.g., Commonwealth v. Cartagena*, 63 A.3d 294, 305–06 (Pa. Super. 2013) ("It is the rare person who is not agitated to some extent when stopped by police, even if the driver is a law-abiding citizen. . . ."). Here, Officer Mooney's characterization of Appellee's understandable reaction to being stopped does not support the Commonwealth's implication that Appellee's nervousness was sufficient to establish the officer had probable cause to believe that Appellee stole the vehicle and stole it using a firearm.

---

[6] We reiterate that the officers released Appellee's vehicle to his parents and that the Commonwealth did not file any charges related to a theft of the vehicle.

Finally, the Commonwealth's conclusion that the firearm was "haphazardly tossed" into the car is not supported by the record; rather, Officer Mooney merely testified that he found the firearm on the floor. N.T. Hr'g at 13. Finding a firearm in a vehicle does not itself indicate that it was used in a crime.

Considering the totality of the circumstances as presented at the suppression hearing, *i.e.*, the mere presence of a firearm combined with mere speculation that a crime occurred and that that crime involved a firearm, the Commonwealth has failed to demonstrate probable cause sufficient to establish the second prong of the plain view doctrine.

Thus, the Commonwealth's argument fails to garner relief.[7]

**D.**

In the alternative, the Commonwealth asserts that exigent circumstances existed to allow police to search the vehicle and seize the firearm without a warrant. Commonwealth's Br. at 12. The Commonwealth relies upon Pennsylvania's limited automobile exception, which requires police to have both probable cause and exigent circumstances to conduct a warrantless search of a vehicle. ***Commonwealth v. Alexander***, 243 A.3d 177, 207 (Pa. 2020).

---

[7] Because the Commonwealth failed to establish the second prong of the plain view test, we need not address the other prongs.

Exigent circumstances exist when there is a "compelling need for official action and no time to secure a warrant," and can include situations where there is a risk of harm to either officers or bystanders. ***Commonwealth v. Trahey***, 228 A.3d 520, 530 (Pa. 2020) (citation omitted); ***Commonwealth v. Stewart***, 740 A.2d 712, 717 (Pa. Super. 1999). ***See also, Commonwealth v. Demshock***, 854 A.2d 553, 557 (Pa. Super. 2004) (finding no exigency where police observed illegal activity from outside a house because police had time to obtain a warrant before occupants noticed them and destroyed evidence). Courts determine exigency based on the totality of the circumstances. ***Alexander***, 243 A.3d at 208.

Here, the Commonwealth maintains that exigent circumstances existed because it permitted Appellee's relatives to drive the car away after the traffic stop and, if the police did not seize the gun, the relatives would have driven the car away while the gun remained in close proximity to the child sitting in the car seat. In other words, the Commonwealth argues that, if the police did not seize the gun during the traffic stop, "the gun could conceivably have been triggered when the car experienced the natural bumps and jostles of traffic and potholes," thus endangering the child in the car seat. Commonwealth's Br. at 13. It also contends that "there was an inherent risk in leaving the very young, unsupervised child alone in the back seat with a gun present." ***Id.*** Notably, the Commonwealth does not argue that officers lacked time to get a warrant.

- 10 -

In addressing the Commonwealth's argument, the trial court observed that the Commonwealth "has wholly ignored the physical limitations associated with the infancy of the child, and the fact that the child was completely restrained to a car seat during the entirety of the incident." Trial Ct. Op. at 6. The court, thus, reasonably inferred that the child's presence was not an exigency that supports the warrantless seizure of the firearm under the facts of this case.

We agree that the Commonwealth did not establish, as a matter of fact or law, that there was an exigency present that precluded police from obtaining a warrant prior to seizing the firearm. Accordingly, this argument merits no relief.

**E.**

In sum, we conclude that the trial court properly suppressed the evidence of the firearm since its seizure did not meet each element of the plain view doctrine and exigent circumstances did not exist to justify the warrantless search and seizure of the vehicle or the firearm. Accordingly, we affirm the order granting the suppression motion.

Order affirmed.

President Judge Emeritus Bender joins the memorandum.

Judge Nichols concurs in result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/30/2023