J-S30021-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL A. MANN | : | No. 1815 EDA 2021 |

Appeal from the Order Entered August 16, 2021
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-000192-2021

BEFORE:   STABILE, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED APRIL 28, 2023**

The Commonwealth appeals from the August 16, 2021, order entered in the Delaware County Court of Common Pleas granting a pretrial motion to suppress by Michael A. Mann (Appellee).[1]  The trial court suppressed all evidence stemming from an investigative detention following a traffic stop, including all controlled substances found on Appellee's person and in the vehicle in which he was a passenger.  The Commonwealth contends: (1) the investigating officer possessed the requisite reasonable suspicion to support the traffic stop based on the odor of freshly burnt marijuana emanating from

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Commonwealth has properly certified in its notice of appeal that the order "will terminate or substantially handicap the prosecution" pursuant to Pa.R.A.P. 311(d).  Notice of Appeal, 9/10/21.

the moving car; and (2) because the stop was proper, the seizure of the evidence recovered from the investigative detention was also permissible. For the reasons below, we reverse the order granting suppression and remand for further proceedings.

## I. Facts & Procedural History

The trial court summarized the relevant facts of this case, which were taken from the April 2021 suppression hearing, as follows:

> Officer Sean Mullen ("Officer Mullen") is a patrolman with the City of Chester Police Department where he has been so employed for approximately three (3) years.
>
> On November 20, 2019[,] at approximately 9:00 p.m.[,] Officer Mullen was on patrol at the 800 block of Kerlin Street in the City of Chester, Delaware County, Pennsylvania. Officer Mullen was in his marked vehicle, which was stopped at a traffic light on the 800 block of Kerlin Street. He was in the left lane. His windows were down. While stopped, he smelled the odor of burnt marijuana, an odor which he recognized given his experience in making arrests for marijuana related offenses. Based upon his prior experience, Officer Mullen concluded that the odor of burnt marijuana is indicative of "someone currently smoking or recently . . . smoked marijuana." Officer Mullen observed another vehicle stopped at the traffic light. This vehicle was stopped in the right lane, next to Officer Mullen. Officer Mullen's vehicle was "less than a car length" away from the other vehicle. The other vehicle had two . . . occupants. Officer Mullen did not observe any smoke emanating from the other vehicle. He did not see either the driver or [Appellee] smoking marijuana. He only smelled the odor of burnt marijuana. However, Officer Mullen suspected that the odor was emanating from the vehicle due to the fact that this vehicle was the only other vehicle "in the vicinity." Officer Mullen offered no testimony with respect to the presence or absence of pedestrians in the area. Officer Mullen offered no testimony as to whether he scanned the area for pedestrians or any individuals on any of the properties located in the vicinity of the intersection.

When the light turned green, Officer Mullen immediately initiated a traffic stop of the vehicle. Officer Mullen offered no testimony as to the specific crime he believed the vehicle occupants to have committed. He initiated the traffic stop solely because he detected an odor of burnt marijuana while stopped at the traffic light and suspected the vehicle to be the origin of the odor. After initiating the vehicle stop, Officer Mullen approached the stopped vehicle on the passenger side. [Appellee] was the only passenger in the vehicle and was seated in the front passenger seat. Upon approaching the vehicle, Officer Mullen observed a bag of suspected marijuana in [Appellee]'s right hand. Officer Mullen described the bag as a clear sandwich bag. Officer Mullen removed [Appellee] from the vehicle and placed him into custody. He then conducted a search incident to an arrest and found suspected heroin in [Appellee]'s top left jacket pocket.

The substance suspected to be marijuana was tested and positively identified as marijuana. The substance suspected to be heroin was field tested and positively identified as heroin. Officer Mullen conducted an inventory search of the vehicle and found "in the center cupholder a half-smoked cigarillo containing marijuana."

Trial Ct. Op., 1/13/22, at 3-5 (unpaginated; record citations omitted).

Appellee was then arrested and charged with the following crimes: (1) one count of possession with intent to manufacture or deliver, (2) two counts of possession of controlled substances, and (3) one count of possession of a small amount of marijuana.[2]

On April 7, 2021, Appellee filed a motion to suppress, seeking to exclude all evidence seized by the police from his person and in the vehicle. He argued that Officer Mullen obtained the controlled substances and paraphernalia in

---

[2] 35 P.S. §§ 780-113(a)(30), (a)(16), and (a)(31), respectively.

violation of federal and state constitutional law. **See** Appellee's Motion to Suppress Physical Evidence, 4/7/21, at 3 (unpaginated).

The trial court held a hearing regarding the matter on April 14, 2021. Trooper Mullen testified at the hearing. The court granted Appellee's motion several days later on April 29th.[3] The Commonwealth subsequently filed a motion for reconsideration of the court's suppression order. In the motion, the Commonwealth asserted that Appellee failed to meet his burden in establishing a reasonable expectation of privacy in the car, and that Officer Mullen

> possessed reasonable suspicion to initiate the car stop based on the strong smell of freshly burned marijuana[, the] police officer had probable cause to arrest [Appellee] upon seeing a baggie of marijuana in plain view as he approached the car, and he thus legally obtained the heroin . . . in [Appellee]'s pocket during a search incident to arrest[,] and the police officer saw in plain view a cigarillo containing marijuana in the cupholder of the car.

Commonwealth's Motion for Reconsideration of the Court's Ruling on [Appellee]'s Motion to Suppress Evidence, 5/7/21, at 2 (unpaginated). Appellee filed a response to the Commonwealth's motion for reconsideration on June 2, 2021.

During this time, the trial court entered an order on May 19, 2021,[4] setting forth a briefing schedule in regard to the motion for reconsideration

---

[3] The order was dated one day earlier on April 28th.

[4] The order was dated two days earlier on May 17th.

and scheduling oral argument for July 19, 2021. The trial court subsequently entered an order granting the Commonwealth's motion for reconsideration. *See* Order, 6/1/21.[5] Following the argument, the court entered another order on August 16, 2021,[6] which denied the Commonwealth's motion. The court further stated: "This [c]ourt's [o]rder of April 2[9], 2021, which granted suppression with respect to all physical evidence obtained in connection with [Appellee]'s arrest on November 21, 2019[,] is affirmed in its entirety." Order, 8/16/21. The Commonwealth filed a timely notice of appeal.

## II. Issues

The Commonwealth presents the following issues for our review:

I. Did Officer Mullen have reasonable suspicion to conduct a traffic stop based on the odor of freshly burnt marijuana emanating from a moving car?

II. Where the investigative detention was legal, was the additional evidence recovered fruit of the poisonous tree?

---

[5] The order was dated May 26th, but docketed and timestamped on June 1st. The order provided, in relevant part:

It is this Court's intent that it[ ]s [o]rder of May 1[9], 2021 be considered an express grant of [r]econsideration, as requested by the Commonwealth's [m]otion, filed on May 7, 2021, thereby extending the Commonwealth's deadline to file an appeal to [the] Superior Court, pursuant to Pa.R.A.P. 903 and Pa.R.A.P. 311(d).

Order, 6/1/21.

[6] The order was dated August 12th, but docketed and timestamped four days later.

Commonwealth Brief at 6.

### III. Vehicle Stop & Reasonable Suspicion

The Commonwealth first argues that Officer Mullen properly possessed reasonable suspicion to conduct a traffic stop based on the odor of freshly burnt marijuana emanating from the stopped car. **See** Commonwealth's Brief at 10. It contends that in relying on **Commonwealth v. Hicks**, 208 A.3d 916 (Pa. 2019), and **Commonwealth v. Barr**, 266 A.3d 25 (Pa. 2021), the trial court "ignore[d] the difference" between probable cause and reasonable suspicion when it ruled that Office Mullen improperly stopped the car, and "failed to properly assess the totality of the circumstances to determine whether there was reasonable suspicion justifying further investigation[.]" Commonwealth's Brief at 10-11. **Id.** The Commonwealth points out that Officer Mullen "testified clearly and credibly that he smelled the odor of recently burnt marijuana coming from the Honda next to him, in which [Appellee] was later found to be the passenger" and "only initiated a traffic stop to investigate the possibility of criminality." **Id.** at 12, 15 (quotation marks & footnote omitted). Moreover, the Commonwealth states:

> Consistent with Pennsylvania law, Officer Mullen . . . reasonably believed that the order of freshly burnt marijuana, which based on his training and experience he knew meant someone had very recently used the drug, was coming from the Honda that was actively being driven. His investigation was thus permissible.

**Id.** at 15

The Commonwealth further suggests that the trial court's reliance on *Hicks*, *supra*, and *Barr*, *supra*, is misplaced because the court "engaged in an incomplete and erroneous analysis of the totality of the circumstances and overlooked factors that properly contributed to reasonable suspicion." Commonwealth's Brief at 16-17. The Commonwealth first states:

> [T]he factual scenario of *Hicks* is distinguishable from the instant case, even if the item possessed in *Hicks* was marijuana rather than a gun. The gun in *Hicks* was being used; rather it was passive. The equivalent form of marijuana would be the fresh, raw marijuana that a person licensed to [possess] under the MMA might have. Yet Officer Mullen did not smell fresh marijuana, he smelled burnt marijuana. . . .

*Id.* at 17. Next, the Commonwealth alleges that "[u]nlike [in] *Barr*, the smell of burnt marijuana was not the only factor present[,]" where Officer Mullen also mentioned the additional factor that the smell of burnt marijuana "was coming from a moving car." *Id.* at 18.

Our review of an order granting a motion to suppress evidence is well-established:

> When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. [Where the defendant] prevailed in the suppression court, we may consider only the evidence of the defense and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's conclusions of law are not binding on an

appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

***Commonwealth v. Tillery***, 249 A.3d 278, 280 (Pa. Super. 2021) (citation omitted). With respect to this issue, we are also guided by the following:

> The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right of the people to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures. To secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty. Because interactions between law enforcement and the general citizenry are widely varied, search and seizure law looks at how the interaction is classified and if a detention has occurred.

***Commonwealth v. Luczki***, 212 A.3d 530, 542 (Pa. Super. 2019) (citations & quotation marks omitted).

> There are three categories of interactions between police and citizens:
>
> The first is a mere encounter, sometimes referred to as a consensual encounter, which does not require the officer to have any suspicion that the citizen is or has been engaged in criminal activity. This interaction also does not compel the citizen to stop or respond to the officer. A mere encounter does not constitute a seizure, as the citizen is free to choose whether to engage with the officer and comply with any requests made or, conversely, to ignore the officer and continue on his or her way.
>
> The second type of interaction, an investigative detention, is a temporary detention of a citizen. This interaction constitutes a seizure of a person, and to be constitutionally valid police must have a reasonable suspicion that criminal activity is afoot.
>
> The third, a custodial detention, is the functional equivalent of an arrest and must be supported by probable cause. . . .

***Commonwealth v. Adams***, 205 A.3d 1195, 1199-1200 (Pa. 2019) (citations omitted & paragraph breaks added).

Turning to the present matter, no one disputes that Appellee was subjected to an investigative detention when Officer Mullen pulled his police vehicle directly behind the Honda, and activated his lights. ***See Commonwealth v. Spence***, 290 A.3d 301, 314 (Pa. Super. 2023) (noting "a motor vehicle stop is generally a second-level interaction, an investigative detention"). As such, Officer Mullen was required to demonstrate that he possessed reasonable suspicion to stop the vehicle at issue.

> In determining whether police had reasonable suspicion to initiate an investigative detention, the fundamental inquiry is an objective one, namely, whether the facts available to police at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate. Reasonable suspicion is dependent upon both the quantity and quality of the information police possess prior to detaining an individual. In order to assess the facts available to police, we must consider the totality of the circumstances. While reasonable suspicion is a less stringent standard than probable cause, the detaining officer must be able to articulate something more than an inchoate and unparticularized suspicion or hunch.

***Commonwealth v. Jefferson***, 256 A.3d 1242, 1248-49 (Pa. Super. 2021) (citations & quotation marks omitted), *appeal denied*, 268 A.3d 1071 (Pa. 2021).

In granting Appellee's motion to suppress, the trial court found "[t]he only specific and articulable fact in this matter is the odor of burnt marijuana, which Officer Mullen detected while stopped in the intersection." Trial Ct. Op.

- 9 -

at 10 (unpaginated). Thus, the central issue, as the trial court properly summarized, is the following:

[W]hether the odor of burnt marijuana which Officer Mullen detected while stopped at the intersection, standing alone, constituted a particularized and objective basis for suspecting that the vehicle occupants were engaged in criminal activity. If it did[,] then Officer Mullen possessed the requisite reasonable suspicion and the stop of the vehicle [was] justified.

*Id.* at 11 (emphasis omitted).

"Historically, Pennsylvania courts have held the smell of marijuana alone was sufficient to establish a reasonable suspicion of criminal activity." *Commonwealth v. Cunningham*, 287 A.3d 1, 9 (Pa. Super. 2022). Nonetheless, following the passage of the Medical Marijuana Act (MMA)[7] and the legalization of marijuana, the Pennsylvania Supreme Court revisited the issue.

First, the Supreme Court considered a similar claim involving the potential legal possession of a firearm in *Hicks*, *supra*. There, the Supreme Court held that an individual's mere possession of a concealed firearm in a public setting constitutes conduct "in which hundreds of thousands of Pennsylvanians are licensed to engage lawfully" and is, on its own, "an

---

[7] 35 P.S. § 10231.101 *et seq.* The Pennsylvania General Assembly enacted the MMA with an effective date of May 2016.

insufficient basis for reasonable suspicion that criminal activity is afoot."

***Hicks***, 208 A.3d at 945.[8]

Subsequently, in ***Barr***, ***supra***, the Supreme Court concluded "that the MMA makes abundantly clear that marijuana no longer is *per se* illegal in this Commonwealth." ***Barr***, 266 A.3d at 41. Nevertheless, the ***Barr*** Court stated that despite the enactment of the MMA, the possession of marijuana is still illegal under the Controlled Substance, Drug, Device and Cosmetic Act (CSA)[9] "for those not qualified under the MMA." ***Id.*** The Supreme Court then held "the odor of marijuana may be a factor, but not a stand-alone one, in

_____

[8] ***Hicks*** overruled a prior decision of this Court, which held that "possession of a concealed firearm by an individual in public is sufficient [in and of itself] to create a reasonable suspicion that the individual may be dangerous, such that an officer can approach the individual and briefly detain him in order to investigate whether the person is properly licensed [to carry a firearm]." ***Hicks***, 208 A.3d at 921, *quoting* ***Commonwealth v. Robinson***, 600 A.2d 957, 959 (Pa. Super. 1991).

[9] 35 P.S. §§ 780-101 *et seq.* ***See also*** 35 P.S. § 10231.304(a) ("Except as provided in [the MMA], the use of medical marijuana is unlawful and shall . . . be deemed a violation of the [CSA]."). The MMA "create[d] a temporary program for qualified persons to access medical marijuana, for the safe and effective delivery of medical marijuana, and for research into the effectiveness and utility of medical marijuana." ***Commonwealth v. Jezzi***, 208 A.3d 1105, 1111 (Pa. Super. 2019) (emphasis & citations omitted). Moreover, "[o]utside the MMA, marijuana remains a prohibited Schedule I controlled substance for the general citizenry who are unqualified under the MMA." ***Id.*** at 1115 (citation omitted). "[T]he General Assembly has not enacted legislation amending the MMA, CSA, or the DUI statutes to remove marijuana from its Schedule I designation under state law." ***Commonwealth v. Stone***, 273 A.3d 1163, 1172 (Pa. Super. 2022) (*en banc*) (footnote omitted), *appeal denied*, 286 A.3d 213 (Pa. Oct. 12, 2022).

evaluating the totality of the circumstances for purposes of determining

**whether police had probable cause to conduct a warrantless search**."

***Id.*** (emphasis added).[10]

Here, the trial court analyzed ***Hicks*** and ***Barr*** and determined:

What ***Barr*** and ***Hicks*** indicate, when taken together, is that a concealed firearm on an individual's person, like the odor of marijuana emanating from a person, may be indicative of a criminal act. However, there is no *per se* rule. It is not a stand-alone, sufficient factor. Courts must examine other specific and articulable facts which, when taken in the totality of the circumstances — the whole picture — warrant individualized suspicion of criminal conduct.

Trial Ct. Op. at 19 (unpaginated) (citation omitted). The court then

determined the Commonwealth failed to demonstrate that Officer Mullen

possessed reasonable suspicion of criminal activity that was sufficient to stop

the vehicle in which Appellee was a passenger, finding:

Officer Mullen detected the odor of burnt marijuana while stopped at an intersection. Nothing more. He suspected that it was emanating from the vehicle in the lane next to him. There was no testimony that he saw the driver or [Appellee], a passenger, smoking marijuana, or that he saw smoke emanating from their

---

[10] The Court further explained:

[W]e emphasize that the realization that a particular factor contributing to probable cause may involve legal conduct does not render consideration of the factor *per se* impermissible, so long as the factor is considered along with other factors that, in combination, suggest that criminal activity is afoot. [T]he totality-of-the-circumstances analysis encompasses the consideration of factors that may arguably be innocent in nature.

***Barr***, 266 A.3d at 41-42.

- 12 -

vehicle. This Court cannot conclude that his suspicion was more than a mere hunch. This Court concluded that there was insufficient individualized and particularized suspicion of criminal activity to warrant intrusion upon the [c]onstitutional rights of [Appellee], a vehicle passenger, based upon the specific and articulable facts of record in this matter.

*Id.* at 24.

We conclude that the trial court's reasoning is misplaced for several reasons. First, we note that **Hicks** and **Barr** are distinguishable from the present matter. **Hicks** concerned the possession of a firearm — based on the nature of the gun, it is not immediately apparent that any illicit conduct is involved because "there is no way to ascertain an individual's licensing status, or status as a prohibited person, merely by his outward appearance." **Hicks**, 208 A.3d at 937. Here, we point out that under the MMA, it is unlawful to **smoke** medical marijuana. **See** 35 P.S. § 10231.304(b) ("It is unlawful to: (1) Smoke medical marijuana. . . .); **see also Commonwealth v. Felder**, 1082 MDA 2021 (Pa. Super. Aug. 9, 2022) (unpub. memo. at 10) (noting that because the MMA does not permit the smoking of marijuana, knowledge that the appellant had paraphernalia for smoking marijuana gave the investigating officer reason to believe the marijuana was being used illegally).[11] Accordingly, it would have been immediately apparent to Officer Mullen that

---

[11] Pennsylvania Rule of Appellate Procedure 126 provides that non-precedential decisions by this Court that are filed after May 1, 2019, "may be cited for their persuasive value." Pa.R.A.P. 126(b)(2).

illegal activity might be occurring based on the odor of **burnt** marijuana. Therefore, *Hicks* is not controlling in the present matter.

The trial court's reliance on *Barr* is also misplaced because that case concerned a **warrantless search** of a vehicle after the officer stopped the car for an alleged motor vehicle code violation, and smelled marijuana once he approached the car. *See Barr*, 266 A.3d at 29-30. As a result, the *Barr* Court analyzed the facts before it pursuant to the probable cause standard, which carries a higher burden of proof than the reasonable suspicion standard.[12] Moreover, the search of a car or person is more intrusive than a motor vehicle stop. *See Commonwealth v. Pratt*, 930 A.2d 561, 563 (Pa. Super. 2007) ("To secure the right of citizens to be free from [unreasonable] intrusions, courts in Pennsylvania require law enforcement officers to demonstrate **ascending levels of suspicion** to justify their interactions with citizens as those **interactions become more intrusive**.") (emphases added & citation omitted). Accordingly, *Barr* does not control the case *sub judice*.

---

[12] The trial court also relied on two more "probable cause" cases, *Commonwealth v. Grooms*, 247 A.3d 31 (Pa. Super. 2021) and *Commonwealth v. Shaw*, 246 A.3d 879 (Pa. Super. 2021). *See* Trial Ct. Op. at 18 n.5-6. *Grooms* concerned a warrantless search of a vehicle after officers detected an odor of marijuana coming from a car located in a mall parking lot. *See Grooms*, 247 A.3d at 34. In *Shaw*, the officer stopped a car for a motor vehicle code violation, and then searched the vehicle upon detecting an odor of marijuana. *See Shaw*, 246 A.3d at 881-82. Like *Barr*, the facts in both cases are distinguishable from the instant matter.

- 14 -

Rather, we are guided by this Court's recent decision in **Cunningham**, **supra**.[13] In that case, the officer was driving down a street when he detected an order of burnt marijuana through the open windows in his vehicle. **Cunningham**, 287 A.3d at 5. He then "scanned the area" and noticed three hooded males, one of whom was later identified as the defendant. **Id.** He did not see any smoke, and there were no cars in the vicinity. **Id.** at 6. As the officer stopped the vehicle and approached the individuals, the smell grew stronger. **Id.** at 5. The three men crossed the street to avoid contact with him. **Id.** The officer asked them to stop while they yelled at him. **Id.** When he asked them if they were smoking marijuana, the men became more aggressive towards him. **Id.** Believing he was in danger, he decided to pat down the men. **Id.** The defendant was the last one searched and the officer immediately identified a handgun in the defendant's front pocket. **Id.** at 5-6. The defendant filed a motion to suppress, which the trial court granted. **Id.** at 6. The Commonwealth then filed a notice of appeal. **Id.**

---

[13] We note that **Cunningham** was decided after the trial court entered its August 16, 2021, order and Rule 1925(a) opinion. "Pennsylvania appellate courts apply the law in effect at the time of the appellate decision. This means that we adhere to the principle that a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occur[ ] before the judgment becomes final." **Commonwealth v. Chesney**, 196 A.3d 253, 257 (Pa. Super. 2018) (citations & quotation marks omitted). Moreover, we note that one three-judge panel of this Court cannot overrule another. **See Commonwealth v. Taggart**, 997 A.2d 1189, 1201 n.16 (Pa. Super. 2010); **see also Commonwealth v. Taylor**, 649 A.2d 453, 455 (Pa. Super. 1994).

Similar to the present matter, the **Cunningham** Court was faced with the question of whether the police had reasonable suspicion to support the stop/investigation detention. **Id.** at 8. The Court analyzed **Hicks** and **Barr** and discussed the most recent caselaw by this Court, including non-precedential memoranda,[14] concerning marijuana and police interactions, explaining:

> This Court has had the opportunity to apply the **Hicks** and **Barr** decisions to various cases. In **Commonwealth v. Dabney**, 274 A.3d 1283, 1289 (Pa. Super. 2022), we assumed, *arguendo*, that **Barr** applies to a determination of reasonable suspicion for an investigative detention, and we held that the officer could consider the odor of raw marijuana, as well as other factors, in making that determination. In **Commonwealth v. Lomax**, 273 A.3d 1049 (Pa. Super. filed Feb. 14, 2022) (unpublished memorandum), we held the smell of fresh marijuana cannot objectively suggest anything more than possession of a substance that many Pennsylvanians can legally possess. Therefore, we concluded that it cannot, on its own, establish the reasonable suspicion necessary to initiate an investigative detention.
>
> More recently, in **Commonwealth v. Felder**, 1082 MDA 2021, (Pa. Super. filed Aug. 9, 2022) (unpublished memorandum), we recognized the MMA does not permit the smoking of marijuana; therefore, the police's knowledge that the defendant had paraphernalia for smoking marijuana gave the officer reason to believe the marijuana was being used illegally. Also, in **Commonwealth v. Mercedes**, 1275 MDA 2021, (Pa. Super. filed Sept. 23, 2022) (unpublished memorandum), we again recognized the MMA does not permit the smoking of marijuana. . . . Accordingly, we held the police had reasonable suspicion that marijuana was being illegally smoked when they smelled burnt marijuana and observed the defendant or his companion smoking a cigarillo. **See Mercedes, supra**.

---

[14] **See** Pa.R.A.P. 126(b)(2).

*Cunningham*, 287 A.3d at 9-10 (footnoted omitted).

The *Cunningham* Court then stated: "[V]iewing the totality of the circumstances, and applying our Supreme Court's holdings in *Barr*, *supra*, and its progeny, we conclude [the officer] had a reasonable suspicion that criminal activity was afoot when he subjected [the defendant] to the investigative detention." *Cunningham*, 287 A.3d at 10. The Court pointed to the burnt smell of marijuana (and the fact the men walked across the street when the officer approached them) to support this conclusion. *Id.* Thus, this Court reversed the trial court's grant of the defendant's motion to suppress.[15]

With these principles in mind, we agree with the Commonwealth that the trial court erred in concluding Officer Mullen did not have reasonable suspicion to stop the vehicle at issue. The record reveals that Officer Mullen, a three-year veteran, was on routine patrol in Chester, Pennsylvania, at 9 p.m. on November 20, 2019. *See* N.T., 4/14/21, at 5-6. His vehicle was located in the left traffic lane, waiting for a green light, with his windows down when he smelled "an odor of burnt marijuana coming from a Honda" that was located "less than a car length" from his vehicle in the right lane. *Id.* at 6, 8.

---

[15] This Court also addressed the issue of whether the officer had reasonable suspicion to frisk the defendant. *See Cunningham*, 287 A.3d at 10-12.

It should be noted that the author of this decision filed a dissenting opinion in *Cunningham*, concluding the officer lacked reasonable suspicion to detain and frisk the appellant. Nevertheless, this author recognizes he is bound by the decision.

Once the light turned green, he activated his emergency lights and conducted a traffic stop. *Id.* at 6. The officer indicated there were no "other vehicles in or around the vicinity of" his car or the vehicle that was subjected to the stop. *Id.* at 7. He could not see into the Honda because of his position. *Id.* at 8. He stated he was "familiar with the smell of burnt marijuana versus raw marijuana[.]" *Id.* at 7. He further stated that based on his experience, burnt marijuana signaled that someone was "currently smoking or recently just smoked marijuana." *Id.* The officer testified he was not aware of any medical marijuana dispensaries in that area. *Id.*

In accordance with the CSA, the MMA, and *Cunningham*, and given the totality of the circumstances (including smelling the odor of burnt marijuana and that the vehicle at issue was the only one in the vicinity), Officer Mullen had reasonable suspicion that criminal activity was afoot — specifically, that marijuana was being smoked illegally[16] — which justified the vehicle stop.[17]

---

[16] In the *en banc* *Stone* decision, this Court stated:

> [D]espite the passage of the MMA, it still is illegal in Pennsylvania to smoke or vape marijuana while driving. If an individual ingests marijuana while driving, it is immaterial whether the marijuana is medical or non-medical or if that individual possesses a valid medical marijuana card; driving while smoking or vaping marijuana remains illegal.

*Stone*, 273 A.3d at 1172 (citations & quotation marks omitted).

[17] It merits mention the trial court did not make a credibility determination concerning Officer Mullen, and the officer did testify that he smelled burnt
*(Footnote Continued Next Page)*

Accordingly, we conclude the trial court erred in granting Appellant's motion to suppress based on Officer's Mullen's alleged lack of reasonable suspicion to stop the vehicle.[18]

**IV. Search & Seizure of Additional Evidence**

Next, we consider the Commonwealth's second argument that because Officer Mullen had reasonable suspicion to stop the Honda, the additional evidence recovered was properly seized and not the fruit of the poisonous tree. **See** Commonwealth's Brief at 22.

*A. The Baggie of Marijuana in Appellee's Hand*

The Commonwealth contends that as a result of the proper stop, Officer Mullen was permitted to seize the baggie of marijuana in Appellee's hand because he observed it in "plain view" and "from a legal vantage point." **See** Commonwealth's Brief at 22. It states that pursuant to the plain view doctrine, "the totality of the circumstances firmly established that there was probable cause to believe that the incriminating nature of the plastic bag

marijuana coming from the car in which the Appellee was a passenger. **See** N.T. at 6. We also note that in **Cunningham**, the officer only smelled the odor of burnt marijuana, but never observed smoke coming from the males. **See Cunningham**, 287 A.3d at 6.

[18] We note that both the Commonwealth and the trial court cite to **In the Interest of A.A.**, 195 A.3d 896 (Pa. 2018), which predates **Hicks** and **Barr**, and was also abrogated on "plain smell" grounds by **Barr**, 266 A.3d at 41. In any event, based on **Cunningham**, we need not reach the issue of whether **A.A.** applies to the present case.

containing marijuana was immediately apparent" and the officer recognized it as contraband based on his experience. *Id.* at 24

> The plain view doctrine provides that evidence in plain view of the police can be seized without a warrant. This doctrine permits a valid warrantless seizure of an item where: (1) the police have not violated the Fourth Amendment in arriving at the location from which the item could be viewed; (2) the item is in plain view; (3) the incriminating character of the item is immediately apparent; and (4) the police have a lawful right of access to the item itself.
>
> There can be no reasonable expectation of privacy in an object that is in plain view. There is no reason a police officer should be precluded from observing as an officer what would be entirely visible to him as a private citizen. To assess whether the incriminating nature of an object was immediately apparent to the police officer, reviewing courts must consider the totality of the circumstances. In viewing the totality of the circumstances, the officer's training and experience should be considered.

*Commonwealth v. Lutz*, 270 A.3d 571, 577-78 (Pa. Super. 2022) (citations & quotation marks omitted).[19]

Here, the record reveals that when Officer Mullen approached the passenger side of the Honda, he looked in and observed Appellee with "a [clear sandwich] bag of marijuana in his right hand." *See* N.T. at 9-10. Based on

_____

[19] The plain view doctrine has not been impacted by *Commonwealth v. Alexander,* 243 A.3d 177 (Pa. 2020), which held that officers must have both probable cause and exigent circumstances to justify a warrantless search of an automobile. In *Commonwealth v. Smith*, 285 A.3d 328 (Pa. Super. 2022), this Court held that "the decision in *Alexander* does not address the plain view exception or any alterations to its requirements[and, t]herefore, where the circumstances permit an application of the plain view exception, we need not apply *Alexander*." *Smith*, 285 A.3d at 332 (citation omitted). *See also Commonwealth v. McMahon*, 280 A3d 1069, 1074 (Pa. Super. 2022).

our analysis ***supra***, Officer Mullen was lawfully outside the Honda when he first observed the bag of marijuana in plain view on the passenger's side from the vantage point of the window. We now turn to whether the bag's "incriminating character was readily apparent" and whether Officer Mullen "had a lawful right of access" to the bag. ***Lutz***, 270 A.3d at 578.

> An officer can never be 100 percent certain that an item in plain view is incriminating, but his belief must be supported by probable cause. A determination of probable cause requires only a probability and not a *prima facie* showing of criminal activity applying a totality of the circumstances test. Thus, probable cause is a practical, nontechnical conception: it is a fluid concept — turning on the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules.

***Lutz***, 270 A.3d at 578 (citations & quotation marks omitted).

As mentioned above, while "marijuana no longer is *per se* illegal in this Commonwealth" following passage of the MMA, "possession of marijuana [is] illegal for those not qualified under the MMA." ***Barr***, 266 A.3d at 41. Moreover, pursuant to the MMA, marijuana "may only be dispensed" in the following forms — pills, oils, topical forms, forms "medically appropriate for administration by vaporization[,]" tinctures, or liquids. 35 P.S. § 10231.303(b)(2)(i-vi). It "may not be dispensed . . . in dry leaf or plant form." 35 P.S. § 10231.303(b)(3). Moreover, unused medical marijuana "shall be kept in the original package in which it was dispensed." 35 P.S. § 10231.303(b)(6).

Applying probable cause as a "practical, nontechnical" concept, we conclude Officer Mullen's belief that the bag of marijuana "in plain view was readily discernible as incriminating in nature provided ample probable cause." *Lutz*, 270 A.3d at 578-79 (citation omitted). The officer immediately recognized that it was marijuana in Appellee's hand and did not indicate that it was in any of the enumerated and permitted forms as set forth in the MMA. Moreover, the officer did not indicate it was in the original packaging; rather it was in a clear plastic sandwich bag. Therefore, we agree with the Commonwealth's argument that based on the totality of the circumstances, Officer Mullen had lawful access to the bag of marijuana in Appellee's hand because he observed the contraband in plain view. Because the seizure was lawful, the trial court erred in granting suppression of the bag containing marijuana.

*B. Drugs Found Search Incident to Arrest*

The Commonwealth further argues that because Officer Mullen had probable cause to arrest Appellee based on his possession of the bag of marijuana, the officer was permitted to search Appellee's person incident to arrest and recover the additional drugs found in his pocket. **See** Commonwealth's Brief at 25.

> The search incident to arrest exception allows arresting officers, in order to prevent the arrestee from obtaining a weapon or destroying evidence, to search both the person arrested and the area within his immediate control. Furthermore, this exception to warrantless searches permits police to search an arrestee's person as a matter of course, without a case-by-case

- 22 -

adjudication of whether such search is likely to protect officer safety or evidence. Stated another way, in all cases of lawful arrests, police may fully search the person incident to the arrest.

*Lutz*, 270 A.3d at 579-80 (citations, quotation marks, & emphasis omitted).

Here, after observing the bag of marijuana in Appellee's hand, Officer Mullen removed him from the vehicle, placed him custody, and then searched incident to arrest. **See** N.T. at 10. He discovered "heroin" in Appellee's "left top jacket pocket." **Id.** We note the Pennsylvania "Supreme Court has expressly recognized that an officer conducting a valid traffic stop may order the occupants of a vehicle to alight to assure his own safety." **Commonwealth v. Mattis**, 252 A.3d 650, 655 (Pa. Super. 2021). Moreover, the search of Appellee's person incident to arrest was proper. **See Lutz**, 270 A.3d at 579-80. Based on the facts before us, we do not discern that the scope of the search or the manner in which the search was conducted gave rise to an impression of illegality. Accordingly, we conclude the trial court erred in granting suppression of the drugs found in Appellee's pocket following a search incident to arrest.

*C. Cigarillo Found in Cupholder of the Car*

In its last argument, the Commonwealth asserts:

[B]ecause neither the driver nor [Appellee] was authorized to drive the vehicle in which they were found (because the driver had neither a license nor registration and [Appellee] was arrested), Officer Mullen needed to immobilize the car. In doing so, he observed in plain view in the center cupholder . . . a half-smoked cigarillo containing marijuana.

Commonwealth's Brief at 25 (citations omitted). The Commonwealth also sets forth an alternative argument that "even if Officer Mullen had not sought to immobilize the car incident to arrest, the suppression of the cigarillo would still remain improper where, as here, [Appellee] failed to meet his burden to prove a privacy interest in the Honda." *Id.* at 26.

Officer Mullen testified that the driver of the Honda "did not have a valid license." N.T. at 14. Moreover, the officer stated that he did not believe the vehicle was registered to the driver. *Id.* at 11. As a result, he conducted an inventory search of the car and found "a half-smoked cigarillo containing marijuana" in the center cupholder. *Id.* at 10. The vehicle was then towed. *Id.* at 14.

We first turn to the Commonwealth's privacy interest argument.

> An expectation of privacy will be found to exist when the individual exhibits an actual or subjective expectation of privacy and that expectation is one that society is prepared to recognize as reasonable. In determining whether a person's expectation of privacy is legitimate or reasonable, the totality of the circumstances must be considered and the determination will ultimately rest upon a balancing of the societal interests involved. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

*Commonwealth v. Viall*, 890 A.2d 419, 422 (Pa. Super. 2005) (citations & quotation marks omitted).

It is well-settled that "a defendant charged with a possessory offense has automatic standing to challenge a search." *Commonwealth v. Burton*,

973 A.2d 428, 435 (Pa. Super. 2009) (*en banc*) (citation omitted). Nevertheless, "in order to prevail, the defendant . . . must show that he had a privacy interest in the area searched." *Id.* at 434 (citation omitted). In *Commonwealth v. Enimpah*, 106 A.3d 695 (Pa. 2014), the Pennsylvania Supreme Court clarified that the Commonwealth retains the initial burden to "present evidence that the defendant's constitutional rights were not infringed." *Id.* at 701. However, if the Commonwealth presents evidence which shows the defendant "lacked such a privacy interest," the burden shifts to the defendant to demonstrate he had a reasonable expectation of privacy in the area searched. *Id.*

This Court has recognized that "occupants of an automobile have a certain expectation of privacy in the operation of that vehicle and may not be subject to unfettered governmental intrusion in the form of an unlawful stop[.]" *Viall*, 890 A.2d at 422. "While passengers in an automobile may maintain a reasonable expectation of privacy in the contents of luggage they placed inside an automobile, it would be unreasonable to maintain a subjective expectation of privacy in locations of common access to all occupants." *Id.* at 423 (citations omitted).

Here, the Commonwealth presented evidence that Appellee was in a car that was being driven by a companion who does not have a valid driver's license and neither occupant of the car were the registered owners. Moreover, the Commonwealth demonstrated the evidence at issue, the cigarillo, was

found in the center cupholder, a common access area to all individuals in the car. Appellee did not present any evidence to refute this testimony. Therefore, we conclude Appellee did not satisfy his burden of demonstrating he had a reasonable expectation of privacy in the vehicle searched. *See Enimpah*, 106 A.3d at 701. Accordingly, the trial court erred in suppressing evidence of the cigarillo because Appellee lacked a privacy interest in the search.[20]

## V. Conclusion

In sum, we reverse the trial court's order granting suppression of evidence stemming from an investigative detention following a traffic stop, including all controlled substances found on Appellee's person and in the vehicle in which he was a passenger.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/28/2023

---

[20] Based on our "privacy interest" determination, we need not reach the Commonwealth's argument concerning the inventory search.